**HUNTON ANDREWS KURTH LLP**
Ann Marie Mortimer (State Bar No. 169077)
amortimer@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Brian A. Wright (admitted *pro hac vice*)
wrightb@HuntonAK.com
951 East Byrd Street
Richmond, Virginia 2321
Telephone:  (804) 788-8710
Facsimile:  (804) 788-8218

Attorneys for Defendant
SEAMLESS CONTACTS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| DOUG SPINDLER, on behalf of himself and all others similarly situated, | CASE NO.:  4:22-CV-00787-KAW |
| Plaintiff, | **SEAMLESS CONTACTS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE THE COMPLAINT OR, IN THE ALTERNATIVE, STAY THE LITIGATION** |
| v. | |
| SEAMLESS CONTACTS INC., | Date:              June 2, 2022 |
| Defendant. | Time:              1:30 p.m. |
| | Court Room:    Court Room TBD |
| | Ronald Dellums Federal Building |
| | 1301 Clay Street |
| | Oakland, CA 94612 |
| | Magistrate Judge:  Hon. Kandis A. Westmore |
| | *[Request for Judicial Notice, Declaration of Ann Marie Mortimer, and [Proposed] Order filed concurrently herewith]* |

*Hunton Andrews Kurth LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2

3          **PLEASE TAKE NOTICE** that, pursuant to Local Civil Rule 7-2(b), Defendant Seamless

Contacts Inc. ("Seamless") hereby files its Motion to Dismiss and Motion to Strike the Complaint, Or

4

in the Alternative, Stay the Litigation.  A hearing has been scheduled for June 2, 2022 at 1:30 p.m., or

5

as soon thereafter as counsel may be heard.  Seamless moves to dismiss Plaintiff's Complaint for lack

6

of subject matter jurisdiction and for the Complaint's failure to state a claim upon which relief can be

7

granted.  In the alternative, Seamless moves to strike the Complaint under California's anti-SLAPP

8

statute.  Or, if the Court does not dismiss or strike the Complaint, Seamless moves to stay the litigation.

9          Seamless moves on the following grounds:  *First*, Plaintiff lacks standing because he has not

10

plausibly alleged a concrete injury in fact resulting from the publication of his already-public

11

professional contact information.  *Second*, the Communications Decency Act bars Plaintiff's claims,

12

which are predicated on Seamless's re-publication of professional contact information provided by

13

other content providers.  *Third*, Plaintiff's right of publicity claims fail because the so-called

14

advertisement is not a prohibited commercial use; the use is instead a matter of public interest; it is

15

incidental use not displayed in connection with a separate product or service; there is no actual injury;

16

and the statutory damages claim is inadequately pleaded.  *Fourth*, Count III, arising under California's

17

Unfair Competition Law, fails because Plaintiff failed to plead that he "lost money or property," and

18

his claim for equitable restitution fails due to the adequacy of legal remedies.  *Fifth*, California's anti-

19

SLAPP statute requires that the Complaint be stricken as an unlawful attack on a matter of public

20

interest.  *Finally*, if the Court declines to dismiss Plaintiff's Complaint in its entirety, it should stay

21

the litigation while the Ninth Circuit considers the appeal of a case asserting similar claims, *Sessa v.*

22

*Ancestry.com*, Case No. 21-16618 (9th Cir. 2021), where oral argument is scheduled for this spring.

23

24   Dated:  April 4, 2022                        **HUNTON ANDREWS KURTH LLP**

25

26                                           By: _____/s/ *Ann Marie Mortimer*_____
                                                  Ann Marie Mortimer
27                                                Brian A. Wright (admitted *pro hac vice*)
                                                  Attorneys for Defendant
28                                                SEAMLESS CONTACTS, INC.

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## TABLE OF CONTENTS

I.    INTRODUCTION AND ISSUES TO BE DECIDED ............................................. 1

II.   BACKGROUND AND PLAINTIFF'S ALLEGATIONS ...................................... 3

III.  ARGUMENT ...................................................................................................... 5

    A.   Plaintiff Fails To Plead An Actual Injury As Required By Article III. ........................... 5

        1.   The Reposting Of Spindler's Public Contact Information Does Not
            Constitute Actual Injury. ............................................................................... 6

        2.   Spindler's Alleged "Distress" Does Not Constitute Actual Injury. .................... 7

        3.   Spindler Is Not Injured By Seamless's Profit. ................................................ 8

        4.   Plaintiff Does Not Create Standing By Making Conclusory Assertions
            About His "Intellectual Property." ................................................................. 8

    B.   The Federal Communications Decency Act Bars Spindler's Claims. ............................. 9

    C.   Spindler Fails to State A Right of Publicity Claim. ..................................................... 11

        1.   Spindler Fails To Plausibly Allege That His Name Or Contact
            Information Was Used For A Commercial Purpose In Advertising. ................. 12

        2.   Matters Of Public Interest, Including Information Directories, Are
            Immune From Liability for Right of Publicity Claims. .................................. 14

        3.   The Contact Information *Is* The Product Being Sold. .................................. 15

        4.   Spindler Alleges Incidental Use For Which Seamless Is Not Liable. ............. 16

        5.   Spindler's Claim Of Misappropriation Fails For Lack Of Actual Injury. ......... 18

        6.   The Court Should Strike Spindler's Prayer For Statutory Damages. ................ 19

    D.   The UCL Claims Fall Away With The Others. ........................................................... 20

        1.   Spindler Has Not Pleaded That He "Lost Money Or Property" And His
            Complaint Fails To Plead That Seamless Did Anything Unlawful, Unfair,
            Or Fraudulent. ............................................................................................ 20

        2.   Adequate Remedies At Law Foreclose Equitable Restitution. ....................... 21

    E.   The Court Should Strike Spindler's Claims Pursuant to California's Anti-SLAPP
       Statute. ...................................................................................................................... 21

    F.   If Dismissal Is Not Granted, A Stay Should Be Entered. ............................................ 23

IV.   CONCLUSION ................................................................................................ 25

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldrin v. Topps Co., Inc.*,
2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ...................................................................16

*Aligo v. Time-Life Books, Inc.*,
1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ................................................................16, 17

*Antman v. Uber Tech., Inc.*,
2018 WL 2151231 (N.D. Cal. May 10, 2018) ...................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................11

*Barrett v. Rosenthal*,
40 Cal. 4th 33 (2006) .........................................................................................................22

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................11

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .............................................................12, 16

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. June 15, 2021) .....................................................................5

*Callahan v. Ancestry.com, Inc.*
2021 WL 783524 (N.D. 1 Cal. March 1, 2021) .................................................1, 7, 10, 11

*Callahan v. PeopleConnect*,
2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .......................................................................1

*Canal Props. LLC v. Alliant Tax Credit V, Inc.*,
2005 WL 1562807 (N.D. Cal. 2005) ..................................................................................25

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ...........................................................................................10

*Carlisle v. Fawcett Publ'ns, Inc.*,
201 Cal. App. 2d 733 (1962) ...............................................................................................6

*CMAX Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .............................................................................................24

*Coffee v. Google, LLC*,
2021 WL 493387 (N.D. Cal. Feb. 10, 2021) .....................................................................11

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Cohen v. Facebook, Inc.*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) .............................................................7, 18, 19

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001) .................................................................................................9

*Complete Genomics Inc. v. Illumina, Inc.*,
  2021 WL 1197096 (N.D. Cal. Mar. 30, 2021)............................................................24

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975) ....................................................................................................15

*DC Comics v. Pac. Pictures Corp.*,
  706 F.3d 1009 (9th Cir. 2013) ....................................................................................22

*De Havilland v. FX Networks, LLC*,
  21 Cal. App. 5th 845 (2018) .......................................................................................15

*Dex Media West, Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) .................................................................................14, 22

*Dora v. Frontline Video*, *Inc.*,
  15 Cal. App. 4th 536 (Cal. Ct. App. 1993) ................................................................14

*In re Doubleclick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001).......................................................................... 8

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
  2016 WL 6523428 (S.D. Cal. Nov. 3, 2016)..............................................................20

*Equilon Enters v. Consumer Cause, Inc.*,
  29 Cal. 4th 53 (2002) ..................................................................................................22

*In re Facebook Privacy Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................................20

*Fairfield v. Am. Photocopy Equip. Co.*,
  138 Cal. App. 2d 82 (1955) .......................................................................................... 7

*Four Navy Seals v. Associated Press*,
  413 F. Supp. 2d 1136 (S.D. Cal. 2005)........................................................................ 6

*Fus v. CafePress, Inc.*,
  2020 WL 7027653 (N.D. Ill. Nov. 30, 2020) .............................................................. 6

*FW/PBS, Inc. v. Dallas*,
  493 U.S. 215 (1990).......................................................................................................5

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400 (Cal. Ct. App. 2001) ................................................................16

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
    794 F. Supp. 2d 1067 (N.D. Cal. 2011) ......................................................................20

*In re Google, Inc. Privacy Policy Litig.*,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ..............................................................8

*Grenier v. Taylor*,
    234 Cal. App. 4th 471 (2015) ...................................................................................23

*Harmon v. Villasenor*,
    2019 WL 188428 (E.D. Cal. Jan. 14, 2019) ................................................................6

*Health Sys. Agency v. Va. State Bd. of Med.*,
    424 F. Supp. 267 (E.D. Va. 1976) ............................................................................15

*Hicks v. PGA Tour, Inc.*,
    165 F. Supp. 3d 898 (N. D. Cal. 2016) ....................................................................21

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ....................................................................23

*Jackson v. Loews Hotels, In.*,
    2019 WL 2619656 (C.D. Cal. Jan 4, 2019) ............................................................6, 7

*Johnson v. Booton*,
    2019 WL 13098502 (N.D. Cal. Aug. 19, 2019) .............................................23, 24, 25

*KEMA, Inc. v. Koperwhats*,
    2010 WL 3464737 (N.D. Cal. Sept. 1. 2010) ...........................................................21

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ..................................................................................10

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) .............................................................................................20

*L.A. Taxi Coop. Inc. v. The Indep. Taxi Owners Ass'n. of L.A.*,
    239 Cal. App. 4th 918 (2015) ...................................................................................23

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..............................................................................................23, 24

*Lightbourne v. Printroom Inc.*,
    307 F.R.D. 593 (C.D. Cal. 2015) ...............................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................1, 5

*Makaeff v. Trump Univ., LLC*,
    2011 WL 613571 (S.D. Cal. Feb. 11, 2011) .............................................................24

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*Martinez v. ZoomInfo Technologies Inc.*,
  Docket No. 3:21-cv-05725 (W.D. Wash.) ...................................................................23

*Miller v. Collectors Universe, Inc.*,
  159 Cal. App. 4th 988 (2008) ...................................................................................19

*Montana v. San Jose Mercury News, Inc.*,
  34 Cal. App. 4th 790 (Cal. Ct. App. 1995), *as modified* (May 30, 1995)....................14

*Moreno v. Hanford Sentinel, Inc.*,
  172 Cal. App. 4th 1125 (2009), *as modified* (Apr. 30, 2009) .........................................6

*Munning v. Gap, Inc.*,
  238 F. Supp. 3d. 1195 (N.D. Cal. 2017) ...................................................................21

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ...............................................................................14, 15

*Newcombe v. Adolf Coors Co.*,
  157 F.3d 686 (9th Cir. 1998) ...................................................................................18

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .................................................................................22

*Perkins v. Linkedin Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ........................................................................19

*Philips v. Ford Motor Co.*,
  726 Fed. App'x 608 (9th Cir. 2018) ..........................................................................21

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir.) ............................................................................................22

*Prudential Home Mortg. Co. v. Superior Court*,
  66 Cal. App. 4th 1236 (1998) ..................................................................................21

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)..................................................................................................15

*Rondberg v. McCoy*,
  2009 WL 5184053 (S.D. Cal. Dec. 21, 2009)..............................................................6

*Ruiz v. Harbor View Cmty. Ass'n*,
  134 Cal. App. 4th 1456 (2005) .................................................................................23

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ...................................................................................15

*Sessa v. Ancestry.com*,
  Case No. 21-16618 (9th Cir. 2021).............................................................................23

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

*Silha v. ACT, Inc.*,
  2014 WL 11370440 (N.D. Ill. Sept 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015).........................8

*Sipple v. Chronicle Publ'g Co.*,
  154 Cal. App. 3d 1040 (1984) ...............................................................................6

*Slivinsky v. Watkins-Johnson Co.*,
  221 Cal. App. 3d 799 (1990) ...............................................................................18

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d. 834 (9th Cir. 2020) ...............................................................................21

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...............................................................................5

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...............................................................................9

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ...............................................................................5

*Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*,
  813 F.2d 1553 (9th Cir. 1987) ...............................................................................5

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...............................................................................15

*Zhang v. Ancestry.com Ops. Inc.*,
  3:21-cv-07652 (N.D. Cal.) ...............................................................................23

**Statutes**

47 U.S.C. § 230(b) ...............................................................................9

47 U.S.C. § 230(c)(1) ...............................................................................10

Cal. Bus. & Prof. Code § 17200 ...............................................................................20

Cal. Bus. & Prof. Code § 17204 ...............................................................................20

Cal. Civ. Code § 3344(a) ...............................................................................4, 12

Cal. Civ. Proc. Code § 425.16 ...............................................................................3, 22

**Other Authorities**

5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:7.50
  (4th ed. 2014) ...............................................................................17

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

1

Black's Law Dictionary (11th ed.)..................................................................................................9

Restatement (Second) Torts § 652C, Appropriation of Name or Likeness (1977) ...........................16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND ISSUES TO BE DECIDED

Plaintiff Doug Spindler ("Spindler") attempts to stretch the use of publicly available professional contact information in a searchable online directory—the modern equivalent of a phone book—into statutory and common law right of publicity claims and a derivative unfair competition claim.  Specifically, Spindler alleges that by incorporating Spindler's name, city of residence, phone number, email addresses, place of work, and job title—which *are publicly available from multiple Internet sources*—into a business directory of more than a million other contacts, Defendant Seamless Contacts, Inc. ("Seamless") violated his common law and statutory rights thereby making him "seriously distressed" (Compl. at ¶ 2).[1]  But Spindler's bare reference to "distress" or "mental injury" over the use of his public phonebook data is no substitute for actual, particularized harm caused by Seamless, and Spindler otherwise fails to plead facts—much less plausibly so—that Seamless, in violation of Cal. Civ. Code § 3344(a), used Spindler's name or likeness "for purposes of advertising or selling, or soliciting purchases of" Seamless's service.  The mere incidental use of Spindler's publicly available contact information in a searchable directory, even for profit, does not qualify as advertising or promotion, or meet the required showing of actual injury.  These pleading deficiencies alone are fatal to his claims, which also fail as a matter of law on multiple other grounds.

First, Spindler's claims fall below the "irreducible constitutional minimum" of Article III, which requires plausible allegations of a compensable "injury in fact" causally related to defendant's conduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Spindler has not pleaded any actual injury or compensable harm.  Instead, in sum, Spindler alleges that (1) his publicly available

---

[1] Plaintiff's claims are part of a cluster of cases now testing the boundaries of the right of publicity in the context of public data, but Spindler's claims exist on the extreme end of the continuum.  *See, e.g.*, *Callahan v. Ancestry.com, Inc.* 2021 WL 783524 (N.D. 1 Cal. March 1, 2021) (dismissing right of publicity claim for use of publicly available data for lack of standing under Article III, and finding re-publication of public data immunized by CDA because platform functionalities are not "transformative"); *Callahan v. PeopleConnect*, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) (allowing claims to proceed).  None of these cases are controlling, and, critically, none have proceeded on allegations as thin as those here.  Complaints that have survived motions to dismiss describe the defendants' use of targeted emails, pop-up ads featuring plaintiffs, and low-resolution free previews enticing users to subscribe to get more information about plaintiffs.  That is absent here.

contact information was reposted; (2) that he was "distressed" that his inclusion in the Seamless directory somehow suggests "advertising" or "promotion" of Seamless's website; (3) that Seamless "violated [his] intellectual property rights and privacy rights" in some unspecified way; and (4) that Spindler has an "economic interest in [his] persona[], which Seamless has stolen and a privacy interest in [his] persona[], which Seamless has violated."  Compl. ¶¶ 18, 19.  But none of these threadbare recitals or conclusory accusations qualifies as an injury in fact.  It is well-settled that the inclusion of Spindler's publicly available contact information in the Seamless directory does not itself constitute a compensable harm, and he does not allege otherwise.  Nor does Spindler's single reference to "distress" qualify as an economic loss or actual injury, or rise to the level of the type of "mental anguish" which in limited circumstances can constitute an independent harm.  Spindler has failed to plead any violation of any intellectual property right or resulting damage, or that his already-public professional contact information has economic value that he has been deprived of because of Seamless's actions.  Spindler's failure to plead actual and concrete, particularized injury is also fatal to each of his claims, all of which require actual harm as an element of the claim.

Seamless's alleged conduct is also immunized from liability by the Communications Decency Act because Seamless is an interactive computer service that does not alter the content of the biographical information it displays, but instead simply displays it on a platform that features searching and filtering functionalities.  Seamless therefore is not a "content provider" within the meaning of Section 230 and cannot be held liable for any right of publicity claim.

Also and fundamentally, examined through the familiar lens of *Iqbal/Twombly*, the Complaint fails to plead plausible facts demonstrating that Seamless used Spindler's contact information "for purposes of advertising or selling, or soliciting purchases of" its service at all.  In this regard, the Complaint is more notable for what it fails to say rather than it what it actually alleges.  Although artfully vague with threadbare assertions of "exploitation" and "harm," Spindler fails to plausibly allege any of the hallmarks of commercial use suggestive of an active promotion or advertisement: there is no targeted advertising sent to Spindler's contacts; there are no pop-up ads featuring Spindler; and there are no "sneak peak" previews of Spindler's contact information or "bait and pay" techniques framed around him.  Without plausible allegations that Seamless directly exploited Spindler's name

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

or likeness to actively advertise or promote Seamless, his claim fails. The mere inclusion of his contact information in the database is not enough. Moreover, Seamless is shielded from liability because phonebooks and directories are protected matters of public interest, which are expressly carved out of both statutory right of publicity and common law misappropriation claims, and which must yield to the First Amendment in any event. Spindler's claims for common law misappropriation and Bus. & Prof. Code § 17200 Unfair Competition ("UCL") fail with his statutory right of publicity claim, and for the additional reasons that he lacks standing under the UCL because he has not pleaded facts showing he "lost money or property" as a result of the inclusion of his contact information in the Seamless directory, as that statute requires, and because he has an adequate legal remedy.

Separately, the Complaint should be stricken under California's anti-SLAPP statute, Cal. Code of Civ. Proc. § 425.16, because it runs afoul of Seamless's free speech rights, and Spindler cannot show a probability of success on the merits. But if any questions on the merits remain, this Court should stay this matter pending resolution of an appeal now before the Ninth Circuit that should resolve potential doubts as to the boundaries of right of publicity claims in the context of public data, and confirm with certainty that Spindler has strayed well beyond them.

## II.   BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Seamless operates a searchable database of professional contacts that connects business professionals with potential customers. Compl. ¶ 5. Its website, www.seamless.ai, displays profiles including names, contact information, job titles, places of work, cities of residence, and other information. *Id.* ¶¶ 1, 4. Plaintiff is one of millions of listings, which include employees from over 157 million companies. *Id.* ¶ 23. He and the putative class members are non-users of Seamless's directory who claim not to have provided any information to Seamless. *Id.* ¶ 1. Seamless offers free trials to potential subscribers, during which trial users can view and download profiles until the trial user's trial "Credits" have run out. *Id.* ¶ 7. The screenshots in the Complaint reveal that those views are fully unobstructed and available in clear text, and the Complaint does not allege that Seamless either directs or limits which directory entries are searched during the trial period. After the trial credits are exhausted, users may continue to view additional directory entries by purchasing a subscription plan. *Id.* ¶¶ 8–9.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Spindler does not specifically object to the inclusion of his publicly available contact information in the Seamless online directory.  With respect to the core claim that Seamless "exploited" Spindler's name to "advertise" or "promote" its online directory, the Complaint is conspicuously devoid of plausible facts.  At best, the proffered screenshots show search results displayed on the same page as other functionality tabs, including "Available Credits" and the option to "Upgrade" once the credits are exhausted.  Compl. ¶ 32.  But other than the fact that the search results for Plaintiff Spindler and others appear on the same page as other platform functionalities, Spindler pleads no facts to support his claim that his name or contact information was specifically used *"for purposes of advertising or selling, or soliciting purchases of" the Seamless directory*.  *See* Cal. Civ. Code § 3344(a).  The factual allegations in the Complaint regarding Defendant's alleged misconduct are sparse and unexceptional, asserting without basis that Seamless used Spindler's name and contact information to "promote a product with which [he and class members have] no relationship and no interest in supporting."  Compl. ¶ 18.  Importantly, Spindler has *not* alleged:

- that any of his information other than his name, city of residence, phone number, email addresses, place of work, and title appeared in the Seamless directory;

- that any inaccurate contact information was contained in the Seamless directory;

- that the contact information about him was not otherwise publicly available;

- that anyone other than his lawyers searched for him or was solicited to do so;

- that searching for his contact information in the Seamless directory during the trial period was expressly conditioned on a paid subscription;

- that he or anyone else paid to search or access his contact information;

- that his name or information was used in targeted email or similar advertisements;

- that his name or contact information was used in "pop up" or partially obscured "sneak peak" advertisements;

- that his photographic likeness appears or was used in any way;

- that he has ever earned, or is capable of earning, any compensation from his name or phonebook data;

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

- that anyone was ever prompted to upgrade to a paid subscription after viewing his contact information on Seamless; or

- that he "lost money or property" or suffered any economic loss whatsoever.

## III.  ARGUMENT

### A.   Plaintiff Fails to Plead an Actual Injury as Required by Article III.

It is axiomatic that in order to proceed in federal court a Plaintiff must allege an injury in fact sufficient to meet Article III's standing threshold.   The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*  "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *3 (N.D. Cal. June 15, 2021) (citation omitted).  Dismissal under Rule 12(b)(1) is appropriate if a plaintiff fails to do so.  Additionally, "[u]nlike a motion to dismiss for failure to state a claim . . . , a motion to dismiss for lack of subject matter jurisdiction may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction without converting the motion into a motion for summary judgment." *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (citations and internal quotation marks omitted).

It is Plaintiff's burden to establish subject matter jurisdiction.  *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  Moreover, actual injury is a jurisdictional necessity that applies to all of Plaintiff's claims, "even in the context of a statutory violation."  *Spokeo*, 578 U.S. at 341; *accord TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . .").  Spindler falls short of carrying his pleading burden.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

1.      **The Reposting of Spindler's Public Contact Information Does Not Constitute Actual Injury.**

The mere existence of Spindler's already-public contact information in Seamless's online directory cannot give rise to a claim of actual injury.  *See, e.g.*, *Harmon v. Villasenor*, 2019 WL 188428 at *2 (E.D. Cal. Jan. 14, 2019) (Plaintiff had "no legitimate expectation of privacy" in information that "is a matter of public record"); *Rondberg v. McCoy*, 2009 WL 5184053, at *9 (S.D. Cal. Dec. 21, 2009) ("A matter that is already public or that has previously become part of the public domain is not private."); *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1144 (S.D. Cal. 2005) ("Numerous cases hold that there is no privacy for a matter already in the public domain."); *Carlisle v. Fawcett Publ'ns, Inc.*, 201 Cal. App. 2d 733, 747–48 (1962) (affirming dismissal, without leave to amend, of claims for libel and invasion of privacy because the publicized facts were matters of public record).  Courts have sensibly explained that information that is "available to any person with a computer" gives rise to no reasonable expectation of privacy.  *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130–32 (2009), *as modified* (Apr. 30, 2009) (affirming dismissal with prejudice of claim for invasion of privacy relating to plaintiff's post on myspace.com, which "opened it to the public eye"); *see also Jackson v. Loews Hotels, In.*, 2019 WL 2619656, at *3–5 (C.D. Cal. Jan 4, 2019) (no injury when plaintiff's already public name, email, phone number, and address were made public); *Fus v. CafePress, Inc.*, 2020 WL 7027653, at *3 (N.D. Ill. Nov. 30, 2020) (no injury for disclosure of already-public physical and email addresses); *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047 (1984) ("[T]here is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public . . . .").

Spindler has not alleged that the contact information contained in the Seamless directory was private.  Nor could he.  As noted in the Request for Judicial Notice ("RJN") and supporting Declaration of Ann Marie Mortimer, all of this information and more is available online from Plaintiff's LinkedIn profile and multiple other public sources.[2]  *See* RJN ¶¶ 1–8; Mortimer Decl. Exs. A–H.  Under these circumstances, Spindler cannot correlate an actual injury to the display of that data.  And even if

---

[2] Because Plaintiff redacted this already-public information from the Complaint, Seamless does not disclose it here or in its supporting documents.  But the content is immaterial; what matters is that the information on these websites is the same as that contained in his Seamless profile.

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Spindler plausibly alleged that Seamless was actually using his public contact information "to solicit paying subscribers [this] – standing alone – does not establish injury." *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *4 (N.D. Cal. Mar. 1, 2021). In any event, Spindler fails even to plead that any trial user ran out of credits and was ***actually prompted to subscribe after viewing Spindler's profile***, which means that any so-called "advertisement" is merely speculative and cannot have caused him injury. *Jackson*, 2019 WL 2619656, at *4 (no standing in data breach claim because plaintiff had not pleaded that anyone actually used the information disclosed in the breach).

## 2.   Spindler's Alleged "Distress" Does Not Constitute Actual Injury.

Spindler's claim thar he was "seriously distressed" does not rise to the level of compensable harm or actual injury. First, conclusory allegations of emotional distress like Plaintiff's do not "suffice to show a plausible entitlement to relief." *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011).[3] And Spindler's bald assertion that the disclosure of his already public professional contact causes this "distress" because it amounts to an advertisement strains credibility to the point of facial implausibility. First, Spindler fails to plead facts demonstrating that the coincidental appearance of his name on a list of search results with other names where a paywall is located could reasonably be, or was, construed by anyone as an advertisement using his name. And, even if it were an advertisement, Spindler fails to allege plausible facts that his association with a professional directory would reasonably cause "distress," much less "mental anguish." Plausible facts demonstrating "mental anguish" are the minimum required to make a threshold showing of actual showing, and they are missing here. *See Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82, 90–91 (1955) (recognizing availability of statutory damages for non-celebrities who suffer "mental anguish"

---

[3] Although *Cohen* assessed plaintiffs' allegations of injury in the context of Rule 12(b)(6), the analysis is apt in the standing context. Like in *Cohen*, where the plaintiffs contended that Facebook's advertisement of its "Friend Finder" tool was a misappropriation of their names or likenesses, Plaintiff here was required to plead not just that he suffered mental anguish, but also "a plausible supporting factual basis for any such assertion." *Cohen*, 798 F. Supp. 2d at 1097. Further, to the extent it is even plausible that Plaintiff would suffer any emotional injury from the re-publication of public phonebook data, any such injury would be highly individualized and unsuitable for class treatment. *See, e.g., Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 602 (C.D. Cal. 2015) (denying class certification for § 3344 claim because, among other reasons, "individualized inquiries would be required even to determine many class members' entitlement to *statutory* damages") (emphasis in original).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

supported by concrete facts demonstrating direct endorsement and resulting injury).  Tellingly, despite claiming he was "seriously distressed," Spindler does not allege that he took any action whatsoever to get his name or information removed from Seamless's website.

### 3.   Spindler Is Not Injured by Seamless's Profit.

In an attempt to breathe life into his claim that his contact information has value and he is injured by its publication, Spindler points to the commercial value of the Seamless directory.  Compl. ¶ 55.  It is well-settled, however, that a defendant's gain does not establish an injury to a plaintiff.  *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own.") (collecting cases at n.36).

The allegedly misappropriated information here is nothing more than professional contact information, publicly available from multiple sources and having no independent economic value or viable market for sale.  *Silha v. ACT, Inc.*, 2014 WL 11370440, at * 3 (N.D. Ill. Sept 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("Plaintiffs' allegations that Defendants profited from selling Plaintiffs' PII [did] not amount to an injury in fact for standing purposes.").  Spindler has not alleged that his publicly available contact information has value, and such an assertion would be implausible in any event.  *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 503, 525 (S.D.N.Y. 2001) (dismissing misappropriation claim with prejudice because collection of "names, e-mail addresses, home and business addresses, [and] telephone numbers" through website cookies does not create economic loss to the subject, given that "[d]emographic information is constantly collected on all consumers by marketers, mail-order catalogues and retailers").  Spindler's individual information has no intrinsic economic value to him, even if the information combined in a searchable online database is valuable to Seamless, and he has failed to allege otherwise.  Without any credible facts of financial harm or actual loss, Spindler's claim of injury falls apart.

### 4.   Plaintiff Does Not Create Standing by Making Conclusory Assertions About His "Intellectual Property."

Spindler alleges that "[b]y using Plaintiff's and Class Members' names, likenesses, photographs, and personas in advertisements for website subscriptions without consent, Seamless has

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

violated their intellectual property and privacy rights."  Compl. ¶ 18.  The mere incantation of the "intellectual property" label, however, does not create a viable claim or actual injury.  Critically missing is *any* explanation, much less plausibly pleaded facts, demonstrating that Spindler's contact information had actual commercial value that was reduced by its inclusion in the Seamless directory.  Black's Law Dictionary defines "intellectual property" as "[a] category of intangible rights protecting ***commercially valuable products of the human intellect***."  Black's Law Dictionary (11th ed.) (emphasis added).  Although the right of publicity is a species of intellectual property, *id.*, it "like copyright, protects a form of intellectual property that society deems to have some social utility," *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (2001).  It often requires "considerable money, time and energy" to establish "one's prominence in a particular field" sufficient "to permit an economic return through some medium of commercial promotion." *Id.* (citation omitted).  The development of the right of publicity is, at bottom, a "kind of creative labor."  *Id.* (describing the right of publicity of the famous Three Stooges).  And although non-celebrities are capable of stating a right of publicity claim, Plaintiff has not sufficiently alleged the infringement of his so-called intellectual property rights, the diminution of any commercial value, or any type of actual harm.  In the absence of well-pleaded facts demonstrating Spindler has an "intellectual property" interest in his name or likeness ***that was diminished or capitalized upon*** by its inclusion in the Seamless directory, Spindler does not save his right of publicity claim by dressing it up as intellectual property.

In sum, plausible allegations demonstrating a legally cognizable "injury in fact [are the] hard floor of Article III jurisdiction that cannot be removed by statute," *Summers v. Earth Island Inst.*, 555 U.S. 488, 497  (2009), and Spindler falls below it whether he characterizes his claim as a broad attack on the publication of already-public data or as a claim that Seamless is unlawfully using Spindler's contact information "for purposes of advertising or selling, or soliciting purchases of" its service.

### B.   The Federal Communications Decency Act Bars Spindler's Claims.

Section 230 of the Communications Decency Act ("CDA") was developed to stimulate and promote a robust and competitive free market for the Internet and other interactive computer service providers.  *See* 47 U.S.C. §§ 230(b)(1)–(2).  In aid of these goals, the CDA bars liability for claims—

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

including privacy-related right of publicity and misappropriation claims as well as UCL claims—predicated on the re-publication of "information provided by another information content provider." 47 U.S.C. § 230(c)(1).  *See e.g.*, *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) (dismissing statutory and common law right of publicity and misappropriation claims as barred by CDA when defendant accused of using plaintiff's identity and likeness to promote third-party content); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (CDA barred misappropriation right of publicity claim).

Spindler's own allegations confirm *at most* that Seamless displays contact directory information, not transformed content, and this squarely qualifies for immunity under the CDA. Spindler does not and cannot contend that the displayed content, which he claims as his own and violative of his rights (i.e., his "name, city of residence, phone number, email addresses, place of work, and job title"), Compl. ¶ 31, are original content created by Seamless.  Indeed, he admits that he "does not know how Seamless obtained" that information.  Compl. ¶ 12.  Yet evidently anticipating that the CDA bars his claims, he baldly asserts that, "Seamless is the sole author, designer, and implementor *of the advertising techniques and profiles giving rise to this lawsuit*."  Compl. ¶ 11 (emphasis added). That is not enough to evade the CDA.  As explained in Part III.C.1, *infra*, there is no plausible use of Spindler's name "for purposes of advertising or selling, or soliciting purchases of" Seamless's service. And although he might argue that the directory information is displayed in a format that includes unique or proprietary search functionality such as an upgrade feature displayed with search results, that same argument failed in *Callahan v. Ancestry.com* and should fail here too:

> Ancestry extracts yearbook data (names, photographs, and yearbook date), puts the content on its webpages and its email solicitations, adds information (such as estimate birth year and age), and adds interactive buttons (such as a button promoting a user to upgrade to a more expensive subscription).  The plaintiffs say that by these actions, Ancestry creates content. . . .  Ancestry did not transform data and instead offered data in a form – a platform with different functionalities – that did not alter the content. Adding an interactive button and providing access on a different platform did not create content.  They just added functionality.

*Callahan*, 2021 WL 783524, at *6 (*citing Kimzey v. Yelp! Inc.,* 836 F.3d 1263, 1270 (9th Cir. 2016) (holding that Yelp! had § 230 immunity for display of restaurant contact, location, and review

4:22-CV-00787-KAW

information despite Yelp!'s adding search functionality, filters, and star ratings); *Coffee v. Google, LLC*, 2021 WL 493387, at *5–8 (N.D. Cal. Feb. 10, 2021) (holding Google immune under the CDA despite its addition of industry standards and odds-of-winning disclosures to video game content). If anything, the conduct alleged in *Callahan* is more transformative than the conduct here, as Spindler makes no allegation that Seamless created unique targeted ads or email solicitations featuring his contact information, as was claimed in *Callahan*. 2021 WL 783524, at *1. The CDA is a complete bar to all of Spindler's claims, whether they are viewed as a broad attack on the re-publication of already-public data or a narrow attack on the inclusion of his contact information on the same page as an "Upgrade" button, and there is no reason in law or logic to depart from the Court's careful reasoning and conclusion in *Callahan* on this very point.

### C.  Spindler Fails to State a Right of Publicity Claim.

Even if Spindler's claims survive Article III scrutiny and evade the CDA (which they do not), they still fail to plausibly state a right of publicity claim under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, it is not enough for a complaint to plead facts "that are 'merely consistent with' a defendant's liability"; more than a "sheer possibility" is required to reach the plausibility standard. *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007)). Critically, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

California's statutory right of publicity provides as follows:

Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or *for purposes of advertising or selling, or soliciting purchases* of, products, merchandise, goods or services, without such person's prior consent, . . . shall be liable for any damages sustained by the person or persons *injured as a result thereof*.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11                                                    4:22-CV-00787-KAW

Cal. Civ. Code § 3344(a) (emphasis added).  A plaintiff must prove six elements in connection with such a claim: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; (4) resulting injury . . . (5) a knowing use by the defendant[;] and (6) a direct connection between the alleged use and the commercial purpose." *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *3 (N.D. Cal. Aug. 16, 2021) (citations and internal quotation marks omitted).  The common law species of the claim requires proof of only the first four of those elements.  *Id.*

For the reasons explained below, when measured through the lens of common sense, Spindler's right of publicity claims crumble on multiple fronts.

### 1.   Spindler Fails to Plausibly Allege That His Name or Contact Information Was Used For a Commercial Purpose in Advertising.

The inclusion of Spindler's contact information among millions of entries in a professional database is not tantamount to misappropriating Spindler's name or likeness "for purposes of advertising or selling, or soliciting purchases of" the database, *see* Cal. Civ. Code § 3344(a), and he has failed to plausibly allege facts to demonstrate otherwise.  To the contrary, Spindler's conclusory allegations that Seamless uses his identity to "advertise paid subscriptions to seamless.ai," Compl. ¶ 2, are refuted by his actual allegations.  Although not entirely clear from the Complaint, Spindler appears to anchor his right of publicity claim in the fact that the search results for his name appear on the same page that includes, among other platform functionalities, an "Available Credits" counter that monitors free credit usage and an "Upgrade" button that allows a user to opt-in to a paid upgrade for additional searches.  Compl. ¶¶ 7, 33–34.  Only one of the screenshots in the Complaint actually displays these images.  Compl. ¶ 32.  It strains the common understanding of "advertisement" however, for Plaintiff to plead, from the mere presence of those graphics, that Seamless is somehow ***using Plaintiff's name or likeness "for purposes of advertising or selling, or soliciting purchases of" its services***.  A trial user can see that information without paying anything to Seamless.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627



If such a tangential connection qualifies as either a commercial use or an advertisement, then every name in every online directory, and innumerable other trivial mentions of one's name or likeness on the Internet qualifies as an advertisement so long as there's also a pay wall associated with trial/limited-access memberships. As Plaintiff's own allegations confirm, there is no plausible advertisement of Seamless's product by virtue of the coincidence of the search results appearing on the same page as other search results and directory functionalities including a credit counter and upgrade option. Critically, there is no use of Spindler's name or information in targeted ads, pop-ups, previews, teasers, or any other type of affirmative "reach-out" that could possibly be categorized as an advertisement using his name. The mere appearance of Spindler's name in a string of search results on the same page as a paywall option does not create an advertisement, and Spindler cannot plausibly claim otherwise. There being no advertisement, no promotion, no solicitation, and no endorsement means there is no injury—and no plausible claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**2.**   **Matters of Public Interest, Including Information Directories, Are
Immune from Liability for Right of Publicity Claims.**

Subdivision (d) of § 3344 exempts from liability any "use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign . . . ." Spindler's right of publicity claims thus fail because informational directories like Seamless's are within the scope of the public interest.

"Like the common law cause of action, the statutory cause of action specifically exempts from liability the use of a name or likeness in connection with the reporting of a matter in the public interest." *Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 793 (Cal. Ct. App. 1995), *as modified* (May 30, 1995). This public-interest defense arises out of, but is actually broader than, the First Amendment, and creates "extra breathing space for the use of a person's name in connection with matters of public interest." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) (affirming no liability for use of bandmembers' names in newspaper polls); *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 546 (Cal. Ct. App. 1993) (affirming no liability in connection with surfing documentary because surfing qualified as a matter of public interest).

The scope of public interest is broad. It encompasses matters that "may legitimately inform and entertain the public," including things like "biographies," and it is enough that the matter be "of more than passing interest to some." *Dora*, 15 Cal. App. 4th at 543, 546. Professional directories like Seamless's qualify as a matter of public interest. As noted in *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012), a yellow-pages directory including "names, addresses, and phone numbers of local businesses and professionals" qualifies as a matter of public interest fully protected by the First Amendment. Indeed, the Ninth Circuit there saw no "principled reason to treat telephone directories differently from newspapers, magazines, television programs, radio shows, and similar media that does not turn on an evaluation of their contents." *Id.* at 965.

Online searchable directories are the modern version of the old-fashioned yellow-pages, and like their paper-printed counterparts, they are fully protected under the First Amendment because of the informational role they serve. "The 'yellow pages' telephone directory was once a ubiquitous part of American life, found in virtually every household and office." *Id.* at 953. As the Supreme Court

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

has recognized, "in a society in which each individual has but limited time and resources," people rely upon others "to bring him in convenient form the facts." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491 (1975). *See also Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388–89 (N.D. Ill. 2016) (attorney directory protected); *Health Sys. Agency v. Va. State Bd. of Med.*, 424 F. Supp. 267, 269 (E.D. Va. 1976) (physician directory protected).

In addition to being exempted from liability as a matter of public interest, Seamless is also immunized because its display of Spindler's contact information is informative. Where the purpose for which a person's identity is used "is 'informative'. . . the use is immune." *New Kids On The Block,* 745 F. Supp. at 1546. Seamless's service provides access to professional contact information like Spindler's. This type of professional contact and employment information for public dissemination is not only squarely within the public interest exception, it is also quintessentially protected "informative" speech. *Id.* (collection of information for public dissemination is protected speech). And because any attempt to limit informative speech, including through a right of publicity claim, is by definition a content-based restriction, strict scrutiny applies. *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (right of publicity claims under California law constitute content-based restrictions). The fact that California's right of publicity law is a content-based restriction is "all but dispositive" that the restriction is "presumptively unconstitutional" in all but the most narrow circumstances where the restriction is narrowly tailored to "serve compelling state interests." *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). So for much the same reasons that the First Amendment doomed an actress's right of publicity claim for her unauthorized portrayal in a television miniseries (specifically including ***advertisements*** for that miniseries), *see De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 862 (2018) (reversing denial of anti-SLAPP motion to strike), Spindler's claims relating to his inclusion in an informative database fail, too, even if they are premised on so-called advertisements. Measured against the First Amendment's exacting standards, Spindler's weak interest in blocking the re-publication of his already-public contact information must fail.

### 3.   The Contact Information *Is* the Product Being Sold.

Spindler's attempt to shoehorn the sale of his publicly available contact information into

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

misappropriation and right of publicity claims fail because the contact information itself is the product being sold.  The heart of a publicity claim is that someone's name or likeness is used to promote or advertise a *separate* product or service.  But there can be no misappropriation claim where product being promoted is the same as the name and information used to promote it.  *See, e.g.*, *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (Cal. Ct. App. 2001) ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product."); *Aldrin v. Topps Co., Inc.*, 2011 WL 4500013, at *1 (C.D. Cal. Sept. 27, 2011) (dismissing misappropriation claim based on publication of astronaut Buzz Aldrin's name, image, and historical information on trading cards listing these same facts).  Here, as in *Gionfriddo* and *Aldrin,* the product being sold *is* a directory containing the public contact and professional affiliation of the plaintiff, so the claim must fail.  *See also Brooks v. Thomson Reuters*, Case No. 21-cv-01418-EMC, 2021 WL 3621837, at * 4 (N.D. Cal. Aug. 16, 2021) ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product.").[4]  Since there is no allegation that Spindler's name or contact information is being used to promote a service other than an online directory that includes his name and contact information, there can be no right of publicity claim.

### 4.  Spindler Alleges Incidental Use for Which Seamless Is Not Liable.

Spindler's claims also fail because, in California, "incidental use of a name or likeness does not give rise to liability for invasion of privacy by appropriation." *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994).  " The rationale for this rule is that an incidental use has no commercial value," *id.* (citation omitted), which means that the claim cannot establish element (2), an appropriation for commercial or other advantage, for either Count I or II, and cannot establish element (6), a direct connection between the use and a commercial purpose, for Count I.  *See also* Restatement (Second) Torts § 652C, Appropriation of Name or Likeness (1977) ("The value of the plaintiff's name is not appropriated by mere mention of it . . . ; nor is the value of his likeness

---

[4] Although *Brooks* included the disclosure of sensitive personal information including criminal history, financial information, and associates—well beyond public contact information—the Court noted that a right of publicity claim could not stand because there is no appropriation where there is no "separate" product being advertised or sold.  2021 WL 3621837, at * 4.

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.")  Stated differently, "***[t]he mere trivial or fleeting use of a person's name or image in an advertisement will not trigger liability when such a usage will have only a de minimis commercial implication***."  5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 28:7.50 (4th ed. 2014) (emphasis added).  When the pleadings reveal that the incidental use defense applies as a matter of law, dismissal pursuant to Rule 12(b)(6) is appropriate.  *See Aligo*, 1994 WL 715605, at *2 (dismissing complaint without leave to amend).

The Court in *Aligo* identified factors relevant to whether a particular use is properly deemed incidental.  These include:

> (1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication.

*Id.* at *3 (citations omitted).  In *Aligo*, the photograph in question was "one of dozens of Rolling Stone [magazine] covers used in the program and is insignificant to the commercial purpose of selling the music anthology," and the plaintiff had not "allege[d] that he is a celebrity or that viewers of the infomercial would be drawn to the music anthology because of his appearance in it."  *Id.*

The application of the *Aligo* factors is even more compelling here because the inclusion of Spindler's name in a database with millions of entries is a paradigm example of an incidental use.  Plaintiff's four-second appearance in the *Aligo* infomercial represented 0.23% of the total infomercial time.[5]  Here, Plaintiff is allegedly one of "millions of individuals" included in the Seamless database, Compl. ¶ 23, or—assuming that "millions" means just two million, which is the lowest number it could be—just 0.00005% of the total database listings.  Relative to the total content at issue, the four seconds in *Aligo* was thousands of times more significant than the single database entry representing Plaintiff Spindler in this case.  Plaintiff has not alleged that he is a celebrity or that his name or contact information has any other "unique quality or value"; his name standing alone is trivial when considered against the scope of the database; and Plaintiff's profile is not alleged to be any more prominent than

---

[5] Twenty-nine minutes comprise 1,740 seconds.  Four seconds divided by 1,740 equals 0.23%.

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

any other profile in the directory.  Also, and significantly, this is *not* a case where any bespoke or targeted advertising incorporating Plaintiff's contact information is sent to prospective users, or where a "teaser" with Plaintiff's obscured contact information can be unlocked only upon payment.

Boiled down, Plaintiff's claim is that *every* profile in Seamless's database qualifies as a non-incidental use for purposes of advertising and promoting Seamless's services, whether or not anyone actually viewed it, and whether or not it even prompted a trial user to upgrade to a paid subscription. That cannot be so.  The right of publicity does not protect some infinitesimal, theoretical value that *might* be assignable to an individual's professional contact information when considered in the aggregate alongside the professional contact information of millions of others.  The use here is incidental, *de minimis* use not giving rise to a viable publicity or appropriation claim.

### 5.   Spindler's Claim of Misappropriation Fails for Lack of Actual Injury.

An injury to Plaintiff resulting from Seamless's conduct is not only a requirement for Plaintiff to establish his Article III standing to sue, but it is also an essential element of both his state-law statutory right of publicity claim under § 3344 and his common law misappropriation claim.  *See, e.g.*, *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) ("Resulting injury is the sine qua non of a cause of action for misappropriation of name.") (discussing both statutory and common law species of the claim); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998) (same).  For the reasons already explained, Plaintiff's allegations fail to plausibly allege that Seamless's conduct has caused Plaintiff to suffer any concrete injury sufficient to confer standing, and it also dooms Counts I and II under Rule 12(b)(6).  *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing right of publicity and UCL claims where Plaintiffs did not "show[] how the mere disclosure to their Facebook friends that they have employed the Friend Finder service (even assuming some of them did not) causes them any cognizable harm, regardless of the extent to which that disclosure could also be seen as an implied endorsement by them of the service").  Judicial experience and common sense should lead to the same conclusion here: that Seamless's use does not, as a matter of law, amount to unlawful, injurious advertising or promotion using Plaintiff's name or likeness.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

The Complaint—in particular the exemplar screenshots included therein—reveal as a matter of law that Seamless is not using Plaintiff's name "for purposes of advertising or selling, or soliciting purchases of" its services. *See* Part III.C.1, *supra*. But even if the inclusion of the search results for Spindler's name on the same page as various other platform functionalities like filtering tools and an upgrade button did somehow amount to an advertisement, solicitation, or promotion, Spindler still must, but doesn't, plausibly plead a resulting injury in fact both to have Article III standing and as an element of his right of publicity claims.

### 6.   The Court Should Strike Spindler's Prayer for Statutory Damages.

Unable to plead actual damages, Spindler seeks statutory damages in connection with his § 3344 claim. *See* Compl. ¶¶ 22, 59; Prayer for Relief. But Spindler cannot bootstrap vague allegations that he suffered "distress" into a claim for statutory damages as a surrogate for actual damages. Statutory damages for a § 3344 claim are reserved for extraordinary circumstances in which the alleged violation is so egregious as to result in mental anguish. *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008); *accord Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1246 (N.D. Cal. 2014) (dismissing § 3344 claim for statutory damages for plaintiff's failure to plead requisite mental anguish). Moreover, threadbare recitals of mental anguish, unsupported by plausible factual allegations, do not suffice. *See Cohen*, 798 F. Supp. 2d at 1097 ("Accordingly, plaintiffs must, at a minimum, plead that they suffered mental anguish as a result of the alleged misappropriation, ***and a plausible supporting factual basis for any such assertion***.") (emphasis added).

Absent plausible allegations of mental anguish—and Spindler makes none—his recourse is to "prove actual damages like any other plaintiff whose name has commercial value." *Miller*, 159 Cal. App. 4th at 1006. Here, Spindler has not plausibly claimed and cannot plausibly claim any "mental anguish" from the inclusion of entirely benign job-related contact information that is available from multiple other public sources. *See Cohen*, 798 F. Supp. 2d at 1097 (no plausible cognizable harm resulting from "mere disclosure" of plaintiff's use of Friend Finder tool). Spindler's transparent effort to leverage the threat of huge statutory damages into a litigation advantage should fail for lack of any factual or legal basis, and this Court should strike Plaintiff's prayer for statutory damages.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

D.      **The UCL Claims Fall Away With the Others.**

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200.  Spindler fails, however, to plausibly plead (as he must) either that he has "lost money or property" sufficient to confer standing to bring the claim, or that Seamless has done anything unlawful, unfair, or fraudulent sufficient to state a claim.  And because his other claims seeking damages offer him an adequate remedy at law, his claim for equitable restitution fails.

1.      **Spindler Has Not Pleaded That He "Lost Money or Property" and His Complaint Fails to Plead That Seamless Did Anything Unlawful, Unfair, or Fraudulent.**

The UCL claim fails at the standing threshold.  The required showing to demonstrate standing under the UCL is even more stringent than under Article III.  Specifically, Spindler must plead facts showing he has "lost money or property" as a result of the inclusion of his public contact information in the Seamless directory.  *See* Cal. Bus. & Prof. Code § 17204; *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, 2016 WL 6523428, at *11 (S.D. Cal. Nov. 3, 2016) ("In order to establish standing under the UCL, a plaintiff's claim must specifically involve lost money or property.") (citations omitted).  The closest Spindler gets is claiming that his contact information has "commercial value," but this too falls short since, as a matter of law, "personal information does not constitute property for purposes of a UCL claim."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 n.14 (N.D. Cal. 2011) ("A plaintiff's 'personal information' does not constitute property under the UCL.").  Spindler is not a Seamless user, Compl. ¶ 1, and plainly has not "lost money or property" sufficient to confer standing. He is instead among a class of putative plaintiffs that the California electorate barred from filing "shakedown" UCL lawsuits like this one when they hadn't actually suffered a financial loss.  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 317 (2011).

But even if Spindler pleaded that he "lost money or property" (and he did not), his UCL claim still fails.  The UCL prohibits "unfair competition," which means "any unlawful, unfair or fraudulent act or practice."  *Id.* at 883.  Plaintiff hasn't alleged any fraud on the part of Seamless; he instead purports to bring his claim under the "unlawful" and "unfair" prongs of the UCL for alleged violations

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

1    of statutory and common law right of publicity and misappropriation.  Compl. ¶¶ 66–68.  As shown

2    above, however, Spindler has failed to show any actionable claim or resulting harm.  And if there "is

3    no predicate unlawful violation, there is no UCL 'unlawful' claim."  *Antman v. Uber Tech., Inc.*, 2018

4    WL 2151231, at *12 (N.D. Cal. May 10, 2018) (citations omitted); *Hicks v. PGA Tour, Inc.,* 165 F.

5    Supp. 3d 898, 911 (N. D. Cal. 2016) ("[W]here the same conduct alleged to be unfair under the UCL

6    is also alleged to be a violation of another law, the UCL claim rises or falls with the other claims."),

7    *vacated in part on other grounds*, 897 F.3d 1109, 1124 (9th Cir. 2018).  The analysis ends there.

8                    ## 2.      Adequate Remedies at Law Foreclose Equitable Restitution.

9            Plaintiff seeks "restitution" in connection with Count III, his UCL claim.  *See* Compl. ¶¶ 22,

10   69, Prayer for Relief.  As pleaded, the request for restitution is barred by application of the Ninth

11   Circuit's holding in *Sonner v. Premier Nutrition Corp.*, 971 F.3d. 834, 844 (9th Cir. 2020) because an

12   adequate remedy of law exists.  *Id.* ("[Plaintiff] must establish she lacks an adequate remedy at law

13   before securing equitable restitution for past harm under the UCL . . . .").  Since Plaintiff's claims are

14   pleaded expressly on the UCL, they fall with the UCL, and are barred in any event by application of

15   *Sonner.* Accordingly, even if the UCL claim survives, the request for restitution should be struck.  *See,*

16   *e.g.*, *Philips v. Ford Motor Co.*, 726 Fed. App'x 608, 609 (9th Cir. 2018) ("[E]quitable remedies

17   available under the Unfair Competition Law (UCL) . . . are 'subject to fundamental equitable

18   principles, including inadequacy of the legal remedy.'") (citing *Prudential Home Mortg. Co. v.*

19   *Superior Court*, 66 Cal. App. 4th 1236 (1998)); *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203–

20   04 (N.D. Cal. 2017) (dismissing claims for equitable relief where plaintiff had an adequate legal

21   remedy); *KEMA, Inc. v. Koperwhats*, 2010 WL 3464737, at *13 (N.D. Cal. Sept. 1. 2010) ("[T]o the

22   extent [plaintiffs'] prayer for damages and restitution is based on [the] UCL claim, the motions to

23   strike the prayer will be granted.").

24           ## E.      The Court Should Strike Spindler's Claims Pursuant to California's Anti-
              SLAPP Statute.

26           Litigation that curbs or limit matters of free speech, including by narrowing access to

27   information in the public interest, is against public policy regardless of the motive.  California's anti-

28   SLAPP statute declares "that it is in the public interest to encourage continued participation in matters

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

of public significance, and that this participation should not be chilled through abuse of the judicial process" and declares that the protections therein "shall be construed broadly."  Cal. Civ. Proc. Code § 425.16(a).  Although based on a state statute, a motion to strike is available in federal court.  *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013).

A defendant moving to strike under the statute "must show that the suit arises from protected speech or petitioning activities."  *Id.* at 1013 (citations omitted).  The "plaintiff's intentions" in bringing the suit "are ultimately beside the point."  *Equilon Enters v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002).  In other words, the defendant need not show that the plaintiff brought the suit to chill speech.  *Id.*  Once a defendant makes a prima facie showing "that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,'" the plaintiff must then show a probability of prevailing on the claim.  *Id.* (quoting Cal. Civ. Code § 425.16(b)(1)) (alteration in original).  Where, as here, a defendant moves to strike based on the pleadings, the Court should apply Rule 12(b)(6) to determine whether a claim has been stated.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.) (subsequent history omitted).

California's anti-SLAPP statute protects not only public statements that are "made in connection with an issue "of public interest, but also "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(2) and (4).  Seamless's searchable online directory of professional contact information plainly qualifies as a protectable public forum.  *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute.").

Nor can there be any real question that the collection of professional contact information in central, searchable format is a matter of public interest.  *See Dex Media West, Inc*., 696 F.3d at 953. The public interest includes "*any issue in which the public is interested.*"  *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original).  The issue need not be "'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest."  *Id.* (internal quotations omitted).  Here, Plaintiff specifically alleges that users have

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

searched for him by name, Compl. ¶ 32, which doubtless makes Seamless's speech about him of interest to those users.  And an issue need not be of interest to a huge number of people for the issue still to be a matter of public interest.  *See Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1468–69 (2005) (homeowners' association letters were issues of public interest); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 482–83 (2015) (speech to churchgoers was issue of public interest).  Finally, even if Plaintiff could credibly argue that the Seamless directory is commercial speech (which it is not), the anti-SLAPP statute still applies.  *See, e.g.*, *L.A. Taxi Coop. Inc. v. The Indep. Taxi Owners Ass'n. of L.A.,* 239 Cal. App. 4th 918, 927 (2015) (applying anti-SLAPP to commercial speech); *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017) (protection under anti-SLAPP statute is even broader than the First Amendment).  This Complaint seeks to quash or restrict access to public speech about a matter of public interest: electronic directory information.  The Court should apply California's anti-SLAPP statute and strike the Complaint.

## F.      If Dismissal Is Not Granted, a Stay Should Be Entered.

There is ample reason to dismiss Plaintiff's Complaint in its entirety.  However, in *Sessa v. Ancestry.com*, Case No. 21-16618 (9th Cir. 2021), the Ninth Circuit is poised to address for the first time the application of state anti-SLAPP protections to right of publicity claims based on the use of public data.  Since this issue is potentially dispositive of Plaintiff's claim, the twin goals of judicial efficiency and fairness will be served by a stay if the Complaint survives dismissal.  At least one other court considering these same issues (in yet another case brought by counsel for Plaintiff in this action) has stayed litigation while it awaits the Ninth Circuit's opinion.  *See Zhang v. Ancestry.com Ops. Inc.*, 3:21-cv-07652 (N.D. Cal.), Dkt. No. 43 at 2, which plaintiffs then voluntarily dismissed, Dkt. No. 44.[6] This Court should follow suit and stay the litigation if it doesn't dismiss or strike the Complaint.

The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Johnson v. Booton*, 2019 WL 13098502, at *1 (N.D. Cal. Aug. 19, 2019) (quoting *Landis*

_____

[6] A motion to stay has been filed in Another similar case, also brought by Plaintiff's counsel, *Martinez v. ZoomInfo Technologies Inc.*, Docket No. 3:21-cv-05725 (W.D. Wash.).  *See* Dkt. Nos. 31 (Mot. to Stay), 35 (Opp'n), 37 (Reply).  A decision is pending as of this writing.

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "A stay pending appeal of another case is appropriate if the disposition on appeal may 'narrow the issues in the pending case and assist in the determination of the questions of law involved.'"  *Id.* (quoting *Landis*, 299 U.S. at 252).  A trial court exercising its discretion to enter a stay should consider three factors: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.  *Id.* (citing *CMAX Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  Although it is the moving party's burden to demonstrate the hardship or inequity of going forward, *Landis*, 299 U.S. at 255, all three factors support a stay here.

First, Plaintiff will suffer no harm from a stay that would sensibly allow the Ninth Circuit to weigh in on issues that are also disputed in this case.  The only potential harm to Plaintiff resulting from a stay is a modest delay in adjudication of his claims, but "delay, by itself, is not a sufficient reason to deny a stay where there is no showing of irreparable damage or injury."  *Johnson*, 2019 WL 13098502, at *2.  That is particularly so here, where Seamless asks the Court to strike the Complaint pursuant to California's anti-SLAPP statute, which affords an automatic right of appeal that would effectively stay the litigation pending the result of that appeal.  *See Makaeff v. Trump Univ., LLC*, 2011 WL 613571, at *2 (S.D. Cal. Feb. 11, 2011) ("[A]n appeal of a denial of an anti-SLAPP motion automatically stays further trial court proceedings on causes of action related to the motion.").

Second, Seamless will face significant hardships and high litigation costs if it is required to proceed with this class-action litigation that appears beyond the legitimate boundaries of existing law.  *Complete Genomics Inc. v. Illumina, Inc.*, 2021 WL 1197096, at *6 (N.D. Cal. Mar. 30, 2021) (granting stay to "reduce potentially unnecessary litigation costs").  Self-evidently, defending a federal class action with a putative class consisting of "[a]ll current and former California residents who are not subscribers of Seamless and whose names and personal information Seamless incorporated in profiles used to promote paid subscriptions," Compl. ¶ 43, where Seamless's database contains millions of records, *id.* ¶ 23, is likely to be a complex and costly undertaking.  In light of a forthcoming

DEFENDANT'S MOTION TO DISMISS OR STRIKE THE COMPLAINT,
OR, IN THE ALTERNATIVE, STAY THE LITIGATION

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

decision that appears likely to provide clarity and guidance on the contours of disputed legal issues here, there is no good reason to require the parties or this Court to expend such resources.

Third and finally, this case involves many of the same legal issues as *Sessa*. Most significantly, like the defendant in *Sessa*, Seamless argues that its electronic directory information qualifies as a matter of public concern for purposes of its anti-SLAPP Motion to Strike. Accordingly, the *Sessa* ruling is likely to be instructive one way or another. Awaiting the Ninth Circuit's opinion will thus promote the efficient use of resources for both the parties and the Court. *Johnson*, 2019 WL 13098502, at *2 (holding that "considerations of efficiency and simplification of the issues warrant a stay" where pending appeals involved similar legal issues). *See also Canal Props. LLC v. Alliant Tax Credit V, Inc.*, 2005 WL 1562807, at *3 (N.D. Cal. 2005) (explaining that proceeding with litigation where a pending appeal contained similar issues and had potential preclusive effect "would be a poor use of judicial resources").

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss (or strike) Plaintiff's Complaint in its entirety. Because the stated defects are irremediable, the dismissal should be with prejudice. If the Court does not dismiss the Complaint in its entirety, the action should be stayed pending the Ninth Circuit's decision in *Sessa* because it could resolve the dispute in the entirety.

Dated:  April 4, 2022                    **HUNTON ANDREWS KURTH LLP**


By:    /s/ *Ann Marie Mortimer*
           Ann Marie Mortimer
           Brian A. Wright (admitted *pro hac vice*)
           Attorneys for Defendant
           SEAMLESS CONTACTS, INC.