Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

*Attorneys for Plaintiff and the Proposed Class*
*(Additional counsel listed on signature page)*

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DOUG SPINDLER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 4:22-cv-00787-KAW |
| v. | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS, STRIKE, OR STAY** |
| SEAMLESS CONTACTS INC., | |
| Defendant. | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

LEGAL STANDARD...............................................................................................2

ARGUMENT ........................................................................................................3

    A.  Plaintiff Alleged Injury Sufficient to Establish Article III Standing. .........................3

        1.  Numerous district courts in this Circuit and elsewhere have held, in nearly identical cases, that plaintiffs have Article III standing..........................................3

        2.  Plaintiff alleges four harms that traditionally gave rise to a common law claim for misappropriation of likeness. .....................................................................4

            i.  Plaintiff alleges economic injury from Seamless's exploitation of, and profiting from, his persona..........................................................................5

            ii.  Plaintiff alleges injury from infringement of his intellectual property. ...........7

            iii.  Plaintiff alleges concrete injury from the denial of his statutory right to control the commercial use of his name and persona. ....................................9

            iv.  Plaintiff alleges mental injury.......................................................................10

        3.  That Seamless collected Plaintiff's name and personal information from public sources does not change the standing analysis. .................................................10

    B.  The Communications Decency Act ("CDA") Does Not Apply. ..............................11

    C.  Plaintiff Properly Pleads His Statutory Right of Publicity Claim............................12

        1.  Seamless used Plaintiff's persona to advertise subscription services.................13

        2.  Seamless's advertisements are not in connection with public affairs.................14

        3.  The product being advertised is a subscription offering many services, not access to Plaintiff's persona. ...............................................................................16

        4.  The doctrine of "incidental use" does not apply.................................................16

        5.  Plaintiff alleges injury.......................................................................................17

        6.  Plaintiff properly pleads entitlement to statutory damages................................18

    D.  Plaintiff has Properly Plead UCL Claims. ...........................................................20

    E.  Seamless's Frivolous Anti-SLAPP Motion to Strike Should be Denied.................21

1.  Seamless's advertisements do not concern a public issue. ................................21

2.  Plaintiff made a prima facie showing of facts. ....................................................23

3.  The exceptions for commercial speech and suits in the public interest apply. .....23

4.  Plaintiff respectfully requests fees and costs related to opposing Seamless's frivolous anti-SLAPP motion. ...........................................................................24

F.  Seamless's Request for a Stay Pending the *Sessa* Appeal Should be Denied as Moot. ...................................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Bonilla v. Ancestry.com*,
  No. 1:20-cv-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021)................................4, 5, 12, 16

*Boshears v. PeopleConnect*,
  No. 21-cv-01222-MJP, 2022 WL 888300 (W.D. Wash. Mar. 25, 2022)................................29

*Breazeale v. Victim Servs., Inc.*,
  878 F.3d 759 (9th Cir. 2017)................................................................................................30

*Calhoun v. Google, LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................................................................8

*Callahan v. Ancestry.com Inc.*,
  Case No. 20-cv-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021).........................5, 31

*Callahan v. PeopleConnect*,
  No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) .........................................3, 25

*Cf. Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal.App.4th 1027 (Cal. Ct. App. 2008) ..........................................................................28

*Cf. Ruiz v. Harbor View Community Ass'n*,
  134 Cal. App. 4th 1456 (2005)..............................................................................................27

*Cohen v. Facebook, Inc.*,
  2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) ........................................................................22

*Cohen v. Facebook, Inc.*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) ("*Cohen I*") ...........................................................22

*Comedy III Prods., Inc. v. Gary Saderup*, Inc.,
  25 Cal.4th 387 (Cal. 2001) .....................................................................................................9

*Davis v. Elec. Arts Inc.*,
  775 F.3d 1172 (9th Cir. 2015)................................................................................................21

*Davis v. Facebook, Inc.*,
  956 F.3d 589 (9th Cir. 2020)...................................................................................................7

*Del Amo v. Baccash*,
  2008 WL 4414514 (C.D. Cal. Sept. 16, 2008)..................................................................11, 24

*Dex Media West, Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012)..................................................................................................19

*Downing v. Abercrombie Fitch*,
  265 F.3d 994 (9th Cir. 2001).................................................................6, 11, 15, 18

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019), cert. denied, 140 S. Ct. 2761 (2020) ......................15

*Eastwood v. Superior Court*,
  149 Cal.App.3d 409 (Cal. Ct. App. 1983)...........................................................1, 7, 14

*ETW Corp. v. Jireh Publishing, Inc.*,
  332 F.3d 915 (6th Cir. 2003)..............................................................................9

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008)............................................................................15

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400, 114 Cal. Rptr. 2d 307 (2001) ................................................18

*Grenier v. Taylor*,
  234 Cal. App. 4th 471 (2015)................................................................................27

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2009).........................................................................26, 28

*In re Doubleclick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................8

*In re Facebook Privacy Litig.*,
  72 F. App'x 494 (9th Cir. 2014)............................................................................7

*In re Google, Inc. Privacy Policy Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........................................................7, 17

*In re Pomona Valley Med. Group, Inc.*,
  476 F.3d 665 (9th Cir. 2007).................................................................................24

*IntegrityMessageBoards.com v. Facebook, Inc.*,
  No. 18-cv-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ......................25

*Kellman v. Spokeo*,
  No. 21-cv-08976, 2022 WL 1157500 (N.D. Cal. April 19, 2022)..................................passim

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016)................................................................................15

*Knapke v. PeopleConnect Inc.*,
  No. 21-cv262, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) ..........................4, 10, 15, 18

*KNB Enterprises v. Matthews*,
    78 Cal.App.4th 362 (Cal. Ct. App. 2000) ................................................................. 11, 15, 23

*Krause v. RocketReach, LLC*,
    No. 21-cv-1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) .................................... 4, 16, 18

*L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*,
    239 Cal. App. 4th 918 (2015).................................................................................................29

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)...................................................................................................3

*Lukis v. Whitepages Inc.*,
    No. 19-cv-4871, 2021 WL 3022319 (N.D. Ill. July 16, 2021)........................................passim

*Manzarek v. Marine*,
    519 F.3d 1025 (9th Cir. 2008) .................................................................................................2

*Martinez v. ZoomInfo*,
    No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. April 11, 2022) ................................passim

*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988)...................................................................................................9

*Miller v. Collectors Univ.*,
    159 Cal. App. 4th 988 (Cal. Ct. App. 2008) ........................................................ 11, 13, 22, 23

*Miller v. Glenn Miller Productions, Inc.*,
    454 F.3d 975 (9th Cir. 2006)..................................................................................................12

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal.App.4th 790 (1995), *as modified* (May 30, 1995) ......................................................18

*Moore v. Regents of University of California*,
    51 Cal.3d 120 (Cal. 1990) ........................................................................................ 10, 30, 31

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
    498 F.2d 821 (9th Cir. 1974)............................................................................................. 7, 12

*Nayab v. Capital One Bank*,
    942 F.3d 480 (9th Cir. 2019)...................................................................................................3

*Newcombe v. Adolf Coors Company*,
    157 F.3d 686 (9th Cir. 1998)...................................................................................................6

*Orthopedic Sys., Inc. v. Schlein*,
    202 Cal.App.4th 529 (Cal. Ct. App. 2012) ...........................................................................10

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) ................................................................. 13

*People v. Operating Engineers Local Union No. 3*,
   195 Cal.App.4th 962 (Cal. Ct. App. 2011) ............................................. 14

*Perfect 10, Inc. v. CCBill, LLC*,
   340 F. Supp. 2d 1077 (C.D. Cal. 2004) ..................................................... 9

*Perfect 10, Inc. v. Talisman Communications, Inc.*,
   2000 WL 364813 (C.D. Cal. March 27, 2000) ........................................ 24

*Perkins v. Linkedin Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014 ................................................. 11, 22

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013) .................................................... 27

*Sessa v. Ancestry.com*,
   No. 2:20-cv02292, 2021 WL 4245359 (D. Nev. Sept. 16, 2021) .................... passim

*Silha v. ACT, Inc.*,
   2014 WL 11370440 (N.D. Ill. Sept 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015); ................. 8

*Smith v. Levine Leichtman Capital Partners, Inc.*,
   723 F. Supp. 2d 1205 (N.D. Cal. 2010) .................................................. 30

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078 (9th Cir. 2002) .......................................................... 11, 14

*Spokeo v. Robins*,
   578 U.S. 330 (2016) ............................................................................ 5

*Timed Out, LLC v. Youabian, Inc.*,
   229 Cal.App.4th 1001 (Cal. Ct. App. 2014) ............................................ 14

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .................................................................. 5, 9, 12

*Weinberg v. Feisel*,
   110 Cal. App. 4th 1122 (2003) ............................................................. 27

*Yeager v. Cingular Wireless LLC*,
   673 F. Supp. 2d 1089 (E.D. Cal. 2009) .................................................. 21

*Zacchini v. Scripps-Howard Broadcasting Co.*,
   433 U.S. 562 (1977) ........................................................................... 14

**Statutes**

765 ILCS 1075/30......................................................................................................... 12

Cal. Civ. Code § 3344...........................................................................................passim

Cal. Civ. Code § 416(c)................................................................................................ 30

Cal. Civ. P. Code § 425.17(c)...................................................................................... 28

Cal. Civ. Proc. Code § 425.16(a)................................................................................. 26

Cal. Civ. Proc. Code § 425.16(e)............................................................................26, 27

Cal. Civ. Proc. Code § 425.17(b)................................................................................. 29

## PRELIMINARY STATEMENT

Seamless Contacts, Inc. ("Seamless") is in the business of aggregating and selling personal information without consent. Seamless obtained names, contact information, job titles, places of work, cities of residence, and other personal information for millions of individuals without their permission. Dkt. No. 1 ("Compl."), at ¶¶2-4. Seamless organized individuals' personal information into profiles representing each individual's identity and persona. *Id.*, at ¶38. Seamless distributed these profiles publicly on the Internet to advertise subscriptions to Seamless services. *Id.*, at ¶¶34-37. Users who searched for an individual on Seamless's landing page received Seamless's profiles for that individual in response. *Id.*, at ¶32. Users who exceeded the proscribed number of free searches, or who clicked the "Upgrade" button on an individual's profile, received a promotional message prompting the user to purchase a subscription costing between $99 and $147 per month. *Id.*, at ¶¶33-36. Seamless advertised that, among other services, subscribers would receive the ability to search, view, and download Mr. Spindler's profiles and those of millions of Class members, and the ability to set up "Real-Time Alerts" that notify the subscriber when Mr. Spindler or another specific Class member "change[s] or leave[s] [their] job." *Id.*, at ¶36.   Seamless advertised its subscription services to salespeople, who use its directory and related services to target individuals with unsolicited promotions. *See id.*

Consequently, Seamless stole intellectual property that belongs to Plaintiff and the Class: their personas. California's right of publicity statute prohibits the knowing use of a person's "name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344. The California tort of misappropriation of name or likeness forbids the "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983). California law protects the right of individuals to refuse consent to the commercial use of their personas. By using Plaintiff's and Class members' personas without their consent to advertise Seamless subscriptions, Seamless harmed Plaintiff and the Class

by taking their intellectual property; violating their protected privacy rights; unjustly profiting from its use of their personas; and disturbing their peace of mind.

This lawsuit is not about the distribution of Plaintiff's and Class members' information. Plaintiff and Class members may have willingly shared some of the information in Seamless's profiles with their employers, professional networking sites, or other entities. This lawsuit is about Seamless's illegal use of Plaintiff's and Class members' personas and personal information to advertise a subscription product they do not endorse and have no desire to promote. Seamless does not use samples of an individual's profile to promote the sale of that specific profile. Rather, Seamless uses free access to profiles to advertise a paid subscription product that includes a wide variety of services, including real-time alerts that inform the subscriber when a targeted individual moves or changes jobs. Compl., at ¶36.

Seamless urges this Court to dismiss Plaintiff's Complaint, to strike it under California's anti-SLAPP statute, or to stay this case pending the (now-dismissed) appeal of a Nevada district court's denial of a similar anti-SLAPP motion brought by the defendant in *Sessa v. Ancestry.com*, Case No. 21-16618 (9th Cir. 2021). As detailed below, every argument Seamless advances in support of its motion to dismiss and strike has been considered and rejected by multiple district courts evaluating similar right of publicity cases. Seamless's request for a stay is moot. For the reasons below, Plaintiff respectfully requests this Court deny Seamless's motions to dismiss, to strike, and to stay. In addition, Plaintiff respectfully requests the award of fees and costs for time spent opposing Seamless's anti-SLAPP motion. Under the California statute, the award of fees and costs is mandatory for frivolous anti-SLAPP motions such as this one.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. Marine*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). A claim survives if it is "plausible on its face." *Nayab v. Capital One Bank*, 942 F.3d 480, 485 (9th Cir. 2019) (quotation omitted). The Court's review on a motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

1

**ARGUMENT**

2

**A. Plaintiff Alleged Injury Sufficient to Establish Article III Standing.**

3

Seamless's motion to dismiss for lack of Article III standing should be denied. Plaintiff has

4

alleged injury-in-fact and has standing to pursue claims under California's right of publicity

5

statute, Cal. Civ. Code § 3344, and the California tort of misappropriation of name or likeness.[1]

6

**1. Numerous district courts in this Circuit and elsewhere have held, in nearly identical cases, that plaintiffs have Article III standing.**

7

8

Nearly all district courts that have considered Seamless's standing argument have rejected

9

it, ruling that plaintiffs have Article III standing to assert right of publicity and misappropriation

10

of name or likeness claims against websites that use personal information gathered from publicly

11

available sources to advertise subscriptions. *See Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL

12

1078630, at *2-6 (W.D. Wash. April 11, 2022) (Pechman, J.) (plaintiff had standing to pursue

13

California § 3344 and California misappropriation of name or likeness claims against a direct

14

competitor of Seamless that uses profiles of names, contact information, job titles, and places of

15

work to advertise subscriptions without consent); *Callahan v. PeopleConnect*, No. 20-cv-09203,

16

2021 WL 5050079, at *14-18 (N.D. Cal. Nov. 1, 2021) (Chen, J.) ("*PeopleConnect*") (plaintiffs

17

had statutory standing under Cal. Bus. & Prof. Code § 17204 and alleged "injury" sufficient to

18

state a claim under Cal. Civ. Code § 3344); *Kellman v. Spokeo*, No. 21-cv-08976, 2022 WL

19

1157500, at *4-6 (N.D. Cal. April 19, 2022) (Orrick, J.) (plaintiffs had standing to pursue § 3344,

20

California misappropriation of name or likeness, and UCL claims); *Lukis v. Whitepages Inc.*,

21

No. 19-cv-4871, 2021 WL 3022319, at *3-4 (N.D. Ill. July 16, 2021) (Feinerman, J.) (standing to

22

pursue Illinois claims); *Sessa v. Ancestry.com*, No. 2:20-cv02292, 2021 WL 4245359, at *4-6

23

(D. Nev. Sept. 16, 2021) (Navarro, J.) (standing to pursue Nevada claims); *Bonilla v.

24

Ancestry.com*, No. 1:20-cv-07390, 2021 WL 5795306, at *3-4 (N.D. Ill. Dec. 7, 2021) ("*Bonilla*")

25

(Kendall, J.) (standing to pursue Illinois claims).

26

In addition, courts in this Circuit and elsewhere have denied motions to dismiss in

27

substantially similar cases without explicitly addressing injury-in-fact or Article III standing. *See,*

28

---

[1] Plaintiff addresses statutory standing with respect to his UCL claim in Part D below.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS, STRIKE, OR STAY  -  3
CASE NO. 4:22-CV-00787-KAW

*e.g.*, *Siegel v. ZoomInfo Technologies, Inc.*, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) (Illinois claims); *Knapke v. PeopleConnect Inc.*, No. 21-cv262, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021) (Ohio claims); *Krause v. RocketReach, LLC*, No. 21-cv-1938, 2021 WL 4282700 (N.D. Ill. Sept. 21, 2021) (Illinois claims); *KolebuckUtz v. Whitepages Inc.*, No. 21-cv-53, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) (Ohio claims).

Seamless cites only one decision in which a court facing similar facts found the plaintiffs lacked standing. Dkt. No. 22, at *5 (citing *Callahan v. Ancestry.com Inc.*, Case No. 20-cv-08437-LB, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021)). As detailed below, the district courts in *Kellman*, *Martinez*, *Sessa*, *PeopleConnect*, and *Bonilla* explicitly considered and rejected the reasoning in *Callahan v. Ancestry* as inconsistent with controlling precedent, including the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021). This Court should follow Judges Orrick, Pechman, Navarro, Chen, and Kendall in rejecting the reasoning of *Callahan v. Ancestry* and finding plaintiff has standing.

### 2. Plaintiff alleges four harms that traditionally gave rise to a common law claim for misappropriation of likeness.

Plaintiff has standing for both his statutory right of publicity and common law misappropriation claims because he alleges harms that traditionally gave rise to a common law claim for misappropriation of name and likeness. Courts evaluating whether a statutory violation gives rise to Article III standing must "ask[] whether plaintiffs have identified a . . . common-law analogue for their asserted injury." *TransUnion*, 141 S. Ct. at 2204. If a common-law analogue exists, and the harm alleged "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" at common law, then Article III standing exists. *Id.* at 2209 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)) (plaintiffs whose credit reports were disseminated without permission had standing because the injury bore a "close relationship to the harm associated with the tort of defamation").

Here, Plaintiff alleges claims under California's right of publicity statute, Cal. Civ. Code § 3344, and the analogous California tort of misappropriation of name and likeness. The Ninth Circuit has recognized that California's right of publicity statute is a modernization of and complement to the California tort for misappropriation of name or likeness. *Downing v.*

*Abercrombie Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001); *Newcombe v. Adolf Coors Company*, 157 F.3d 686, 692 (9th Cir. 1998). Because Plaintiff alleged harms that traditionally gave rise to a common law claim, Plaintiff has Article III standing to pursue both his statutory and common law claims. *See Kellman*, 2022 WL 1157500, at *5 (plaintiffs had standing to assert § 3344 and California misappropriation claims because they alleged "harm[s] recognized at common law"); *Sessa*, 2021 WL 4245359, at *4 ("Plaintiffs have alleged concrete injury . . . because they seek relief for claims analogous to those available at common law").

> ### i.  Plaintiff alleges economic injury from Seamless's exploitation of, and profiting from, his persona.

First, Plaintiff alleges injury in the form of Seamless's unjust profits from its unauthorized use of his persona, which "denied Plaintiff[] the economic value of [his] likeness[]." *See PeopleConnect*, 2021 WL 5050079, at *15. Because "[e]conomic value may reasonably be inferred from use . . . to advertise," the use of personal information to advertise a website subscription satisfies § 3344's requirement that the plaintiff be a "person or persons injured." *Id*., at *14-15. The *Martinez* court agreed, finding that the "commercial value" of the persona was "evident in ZoomInfo's reliance on this kind of information to generate profit." *Martinez*, 2022 WL 1078630, at *4. The plaintiff had standing because "she has been denied the economic value from defendant's non-consensual misappropriation." *Id*.

The decisions in *PeopleConnect* and *Martinez* find support in the history of California's tort of misappropriation of name or likeness. Traditionally, alleging the defendant used and profited from a name or likeness gave rise to a misappropriation claim. *See, e.g., Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983) (recognizing common law claim for "appropriation, for the defendant's advantage, of the plaintiff's name or likeness."). A person need not be a celebrity to suffer economic harm. Applying California law, the Ninth Circuit noted that "the appropriation of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously economically valueless." *Motschenbacher v. R. J. Reynolds Tobacco Co*., 498 F.2d 821, 825–27 n.11 (9th Cir. 1974).

Seamless does not cite *PeopleConnect* or *Martinez*, nor does it offer any reason why a different result is warranted here. Seamless relies primarily on *In re Google, Inc. Privacy Policy*

*Litig.* for the general proposition that "a plaintiff must do more than point to the dollars in a defendant's pocket." Dkt. No. 22, at *8 (citing 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("*Google*")). However, the reasoning in *Google* has been superseded by subsequent controlling authority. In *Davis v. Facebook, Inc.*, the Ninth Circuit held that the plaintiffs had Article III standing because they alleged "Facebook [was] unjustly enriched through the use of their data." 956 F.3d 589, 599 (9th Cir. 2020). The Ninth Circuit reasoned that because "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss," the plaintiffs had "adequately pleaded an entitlement to Facebook's profits" from its use of their data. *Id*. at 600. In line with the *Davis* decision, in *Calhoun v. Google, LLC*, Judge Koh confirmed that the "Ninth Circuit . . . [has] concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing." 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (citing *In re Facebook Privacy Litig.*, 72 F. App'x 494, 494 (9th Cir. 2014)).

Seamless also cites two out-of-circuit cases for the propositions that Plaintiff's personal information has "no independent economic value"; that there is no "viable market for sale" of his information; and that any "assertion" Plaintiff's personal information "has value . . . would be implausible." Dkt. No. 22, at *8 (citing *Silha v. ACT, Inc.*, 2014 WL 11370440, at *3 (N.D. Ill. Sept 2, 2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015); *In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 503, 525 (S.D.N.Y. 2001)). Setting aside that *Silha* and *In re DoubleClick* say nothing of the sort, these propositions would come as a surprise to Seamless's investors, because Seamless is in the business of selling names, contact information, and other personal information for profit. *See* Compl., at ¶35-36. *Silha* and *In re DoubleClick* do not address right of publicity or misappropriation of name or likeness claims and are therefore irrelevant. In both cases, the decision turned on the plaintiffs having consented to defendant's collection and use of their information. *See Silha*, 807 F.3d at 715; *In re DoubleClick*, 154 F. Supp. 2d at 510-541. Here, Plaintiff never consented to Seamless's collection of his information, and even if he had, this would not be sufficient. Section 3344 requires that Seamless obtain consent to use Plaintiff's information to

promote subscriptions, not simply its collection. Cal. Civ. Code § 3344. Plaintiff did not provide this consent. Compl., at ¶¶28-29.

### ii.    Plaintiff alleges injury from infringement of his intellectual property.

Second, Plaintiff alleges injury from Seamless's infringement of his intellectual property rights in his name and persona. Traditionally, the California tort of misappropriation of a name or likeness recognized an intellectual property right in an individual's name and likeness. The misappropriation of this intellectual property was itself injury, just as the unauthorized use of patented, copyrighted, or trademarked material is injury. *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988) ("[C]ommon law rights are also property rights. Appropriation of such common law rights is a tort in California."); *see also Comedy III Prods., Inc. v. Gary Saderup, Inc.*,

25 Cal.4th 387, 399 (Cal. 2001) ("The right of publicity . . . protects a form of intellectual property"); *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) ("The right of publicity is an intellectual property right . . . which has been defined as the inherent right of every human being to control the commercial use of his or her identity"); *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1109 (C.D. Cal. 2004) (same).

Because violation of this intellectual property right was harm giving rise to a common law misappropriation claim, district courts applying the analysis required by *TransUnion* and *Spokeo* have ruled that individuals whose personal information is used to advertise website subscriptions have Article III standing. *See Kellman*, 2022 WL 1157500, at *5 ("[plaintiffs] allege [defendant] unjustly profited from their intellectual property—a harm recognized at common law") (citation omitted); *PeopleConnect*, 2021 WL 5050079, at *19 (individuals' "names and likenesses are intellectual property," and a website's use without compensation satisfies the requirement for alleging "lost money or property" under Cal. Bus. & Prof. Code § 17200); *Sessa*, 2021 WL 4245359, at *6 ("the right of publicity refers to a property right in a person's identity") (quotation omitted); *see also Knapke*, 2021 WL 3510350, at *8 ("Individuals have a property right in their own identity") (quotation omitted).

Seamless agrees that "the right of publicity is a species of intellectual property," Dkt.

No. 22, at *9, but insists without citation that the infringement of Plaintiff's intellectual property

causes injury only if the property was "diminished or capitalized upon" by Seamless, *id.* Plaintiff

agrees that he must plead Seamless "capitalized upon" his persona by using it "on or in products .

. . or for purposes of advertising or selling." Cal. Civ. Code § 3344. He has. Compl., at ¶¶31-38;

53-59; 62. Plaintiff disagrees that he must plead the use "diminished" the value of his persona. No

such requirement appears in the statute or case law, and Seamless cites no authority.

Seamless also suggests that a plaintiff must have invested "money, time and energy" in

commercially developing their persona prior to the defendant's use. Dkt. No. 22, at *9 (citation

omitted). Courts have rejected this argument. *See, e.g.*, *PeopleConnect*, 2021 WL 5050079, at *14-

16; *Martinez*, 2022 WL 1078630, at *4. Neither the common law misappropriation tort nor the

statutory right of publicity requires that a plaintiff be a celebrity or otherwise have developed a

pre-existing commercial interest in her name or likeness. *See Moore v. Regents of University of

California*, 51 Cal.3d 120, 138 (Cal. 1990) (reviewing case law and concluding "[t]hese opinions

hold that every person has a proprietary interest in his own likeness and that unauthorized, business

use of a likeness is redressable as a tort"). The legislative history shows that the statute was

intended to provide a cause of action for "noncelebrity plaintiffs whose names lacked commercial

value on the open market." *Orthopedic Sys., Inc. v. Schlein*, 202 Cal.App.4th 529, 546 (Cal. Ct.

App. 2012) (quotation omitted). The case law recognizes that plaintiffs may bring § 3344 claims

without demonstrating their likenesses had commercial value prior to the defendant's exploitation.

Judge Koh's decision in *Fraley* is directly on point:

> The Court finds nothing in the text of the statute or in case law that supports
> Defendant's interpretation of § 3344 as requiring a plaintiff pleading economic
> injury to provide proof of preexisting commercial value and efforts to capitalize on
> such value in order to survive a motion to dismiss. . . The statutory text makes no
> mention of preexisting value . . . Nor does the Court find any reason to impose a
> higher pleading standard on non-celebrities than on celebrities.

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806-07 (N.D. Cal. 2011) (emphasis in original)

(surveying supporting caselaw including *Del Amo v. Baccash*, 2008 WL 4414514 (C.D. Cal. Sept.

16, 2008); *Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002); *KNB Enterprises v. Matthews*,

78 Cal.App.4th 362 (Cal. Ct. App. 2000); and *Downing*, 265 F.3d 994)*; see also Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1190 (N.D. Cal. 2014) ("LinkedIn is alleged to have misappropriated Plaintiffs' names to promote LinkedIn . . . which is indisputably economically valuable to LinkedIn"). Were Plaintiff's persona not valuable intellectual property, Seamless would not have misappropriated it and incorporated it in advertisements.

> ### iii.   Plaintiff alleges concrete injury from the denial of his statutory right to control the commercial use of his name and persona.

Third, Plaintiff alleges injury from Seamless's denial of his right to control the commercial use of his name and persona. Traditionally, the right of publicity protects "the inherent right of every human being to control the commercial use of his or her identity." *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 988 n.6 (9th Cir. 2006) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:43 (4th ed. 2005)). This principle is embodied in both Cal. Civ. Code § 3344 and California's common-law misappropriation tort. *Id*. In *Fraley*, the court found the plaintiffs had Article III standing to pursue a § 3344 claim because § 3344 arose from California common law protecting "the right to prevent others from appropriating elements of one's identity for commercial gain." 830 F. Supp. at 806. Therefore, "alleg[ing] a violation of their individual statutory rights" was sufficient to allege "an invasion of a legally protected interest for Article III purposes." *Id*., at 797.

Similarly, *Lukis v. Whitepages* ruled that a violation of Illinois' right of publicity statute "inflicts a concrete injury-in-fact under Article III." 2021 WL 3022319, at *4 (citing *Spokeo* and *TransUnion*). The *Lukis* court reasoned that the Illinois statute "codified [the] common law tort," which protected a substantive "right to control and to choose whether and how to use an individual's identity for commercial purposes." *Id*.; *see also Bonilla*, 2021 WL 5795306, at *4 (accord). This reasoning applies equally to the California right of publicity statute. *Compare* 765 ILCS 1075/30 ("A person may not use an individual's identity for commercial purposes . . . without having obtained previous written consent"); *with* Cal. Civ. Code § 3344.

### iv.   Plaintiff alleges mental injury.

Fourth, Plaintiff alleges Seamless's illegal conduct caused him mental injury and disturbed his peace of mind. At common law, mental injury "suffered from an appropriation of the attributes of one's identity" was injury giving rise to a cause of action. *See Motschenbacher*, 498 F.2d at 824-25. Knowledge of possible economic loss resulting from a defendant's misappropriation, and knowledge of potential harm to reputation resulting from the promotion of a product the Plaintiff does not approve of, are sources of mental anguish giving rise to a claim. *See Miller v. Collectors Univ.*, 159 Cal. App. 4th 988, 1006 n. 12 (Cal. Ct. App. 2008) ("A plaintiff's knowledge of possible commercial loss and/or defamation may be a component of mental harm, disturbing one's peace of mind."). Plaintiff alleges injuries arising from both, *see* Compl., at ¶42, and therefore adequately alleges injury giving rise to Article III standing. Judge Pechman recently ruled that a plaintiff sufficiently plead mental injury based on very similar allegations. *Martinez*, 2022 WL 1078630, at *5 ("Although [defendant] contends these allegations are inadequate, the Court finds them sufficient to state a plausible claim of mental harm"); *see also Kellman*, 2022 WL 1157500, at *5 ("[plaintiffs] allege that [defendant's] actions cause them emotional and mental harm—a harm recognized at common law") (citation omitted).

### 3.   That Seamless collected Plaintiff's name and personal information from public sources does not change the standing analysis.

Seamless argues Plaintiff has not alleged Article III injury because "he has not alleged the information" Seamless used to advertise is subscriptions "was private." Dkt. No. 22, at *6. Seamless argues that because Plaintiff's information is posted on professional networking sites like LinkedIn – a fact Plaintiff plead in the Complaint, *see* Compl., at ¶¶15 & 38 – Seamless cannot have caused injury by using Plaintiff's information to advertise its website. *See* Dkt. No. 22, at *6-7. This misunderstands the right of publicity. While some privacy rights are about preventing dissemination, others like the right of publicity are about controlling how one's personal information is used. Historically there were "four privacy torts recognized at common law": (1) "intrusion upon the seclusion of another"; (2) "appropriation of the other's name or likeness"; (3) "unreasonable publicity given to the other's private life"; and (4) "publicity that unreasonably places the other in a false light." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 & n.6 (9th Cir.

2019) (quotation omitted). Both the "appropriation" and "false light" torts protect an individual's right to control how personal information is used, not to prevent its dissemination. *See id*. Neither tort requires pleading that information was secret or non-public prior to the defendant's misuse. *See People v. Operating Engineers Local Union No. 3*, 195 Cal.App.4th 962 (Cal. Ct. App. 2011) (elements of "false light" tort); *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 417 (Cal. Ct. App. 1983) (elements of "appropriation" tort) (superseded by statute on other grounds as noted in *Solano v. Playgirl, Inc*., 292 F.3d at 1089 n.7). As the Supreme Court recognized in *Zacchini v. Scripps-Howard Broadcasting Co*., "in right of publicity cases the only question is who gets to do the publishing." 433 U.S. 562, 573 (1977)*; see also Sessa*, 2021 WL 4245359, at *6 n.3 ("right of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes.").

Seamless's argument that a plaintiff's rights are violated only if a defendant disseminates information that was entirely secret would read the right of publicity out of existence. The right of publicity gives individuals comfort they may safely place their names and likenesses in the public eye by, for example, sharing professional information on a public website, without fear someone will capture and exploit their names and identities for commercial gain. *See Timed Out, LLC v. Youabian, Inc*., 229 Cal.App.4th 1001, 1006 (Cal. Ct. App. 2014) (the right of publicity is the "right to prevent others from misappropriating the economic value" of one's name or identity). Accordingly, almost all right of publicity cases involve material the plaintiff intentionally distributed, which the defendant then copied from a public or semi-public source. *See, e.g., Fraley*, 930 F. Supp. at 799 (denying motion to dismiss § 3344 claim arising from Facebook's copying and use of information and photographs its users uploaded to the site); *Downing*, 265 F.3d 994 (reversing summary judgment of § 3344 claim where defendant copied plaintiff's image from a published book); *KNB Enterprises*, 78 Cal.App.4th at 365-66 (reversing summary judgment of § 3344 claim where defendant copied information that had been published online).

**B. The Communications Decency Act ("CDA") Does Not Apply.**

Seamless argues that it is entitled to CDA immunity. This defense fails because Seamless actively created the profiles and advertising webpages giving rise to this suit. Seamless does not

passively host content created by others. "The prototypical service qualifying for CDA immunity is an online messaging board . . . on which Internet subscribers post comments." *Knapke*, 2021 WL 3510350, at \*4 (quoting *Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1266 (9th Cir. 2016)). The CDA "protects websites from liability . . . for material posted on their websites by someone else." *Id*. (quoting *Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1097 (9th Cir. 2019), cert. denied, 140 S. Ct. 2761 (2020)). But when the website is "responsible, in whole or in part, for the creation or development of the offending comment," then the website is "also a content provider" under the CDA, and it is not entitled to protection. *Id*. (citing *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008)).

Here, Seamless's profiles about individuals are not merely "passive display[s] of content created by another entity." *Knapke*, 2021 WL 3510350, at \*4. Rather, Seamless actively collected personal information about the Plaintiff from various sources, created the profiles incorporating Plaintiff's personal information, and incorporated those profiles in an advertising flow that begins by encouraging users to search for potential sales contacts and ends by signing users up for a subscription service. Compl., at ¶¶15, 31-38. Many district courts have held that websites with precisely this business model are "information content provider[s]" with respect to the profiles they create and are therefore not entitled to CDA immunity. *See, e.g.*, *Knapke*, 2021 WL 3510350, at \*4; *Bonilla*, 2021 WL 5795306, at \*4 (defendant "collected and organized records and subsequently used . . . names, likenesses, and identities in these records they curated for commercial gain"); *Kellman*, 2022 WL 1157500, at \*13 ("[defendant] is not alleged to merely host *user-generated* content . . . the allegations are that there are no users of [the website] who *generate* content at all") (emphasis in original); *Sessa*, 2021 WL 4245359, at \*11; *Krause*, 2021 WL 4282700, at \*4; *Lukis*, 454 F.Supp.3d at 763. In short, because Seamless does not passively host content created by others, but instead actively designed and created the profiles, CDA immunity does not apply.

## C. Plaintiff Properly Pleads His Statutory Right of Publicity Claim.

The California Right of Publicity Statute, Cal. Civ. Code § 3344, forbids the knowing use of a "name, voice, signature, photograph, or likeness, on or in products . . . or for purposes of

advertising or selling . . . products . . . or services" without prior consent. As plead in the Complaint, Seamless violated this statute by using Plaintiff's name and personal information in profiles intended to sell subscriptions to Seamless's services.

**1. Seamless used Plaintiff's persona to advertise subscription services.**

Citing no authority, Seamless argues the Complaint does not show that Seamless used Plaintiff's persona "for purposes of advertising or selling" Seamless subscriptions because it does not show Seamless "affirmative[ly] reach[ed]-out" to the user. *See* Dkt. No. 22, at *12-13; Cal. Civ. Code § 3344. Seamless appears to suggest that only messages actively sent by the advertiser qualify as "advertising or selling." Dkt. No. 22, at *12-13. Because they were generated in response to a user's search for Plaintiff's name, the screenshots shown in Complaint paragraphs 31 to 36 apparently do not meet Seamless's definition. *See id.* Seamless's invented limitation would exclude most modern advertising, the vast majority of which is delivered by search engines like Google in response to user searches for topics of interest, just as Seamless delivered its advertisement in response to a search for Mr. Spindler. *See* Compl., at ¶32. Seamless's interpretation finds no support in the statute or case law. And Seamless fails to identify any other reason why it might be publicly displaying Mr. Spindler's persona on its website, other than to advertise the website subscriptions it is in the business of providing.

The Complaint shows two methods by which Seamless directly links Plaintiff's persona to a solicitation for a subscription. First, users may search for and view Plaintiff's profile as part of a free trial that includes a limited number of free "Credits." Compl., at ¶¶32-33. When the user has expended all her free "Credits" by performing searches and other actions on the site, she must purchase a subscription at a cost between $99 and $147 per month to continue searching and viewing Plaintiff's profile and the profiles of millions of other Class members. *Id.*, at ¶¶34-35. Second, on the page of search results displaying Plaintiff's profile, the website advertisement prompts users to "Upgrade." *Id.*, at ¶32. Users who purchase an "Upgrade" receive a variety of services, including the ability to set up "Real-Time Alerts" that will notify the subscriber when Plaintiff "change[s] or leave[s] [his] job." *Id.*, at ¶35.

Many courts have held that highly similar website flows were "advertising or selling" and using personas "for a commercial purpose" within the meaning of § 3344 and related state right of publicity statutes. For example, in *Sessa* and *Siegel*, courts held that plaintiffs stated statutory right of publicity claims when they plead that websites provided public access to profiles of the plaintiffs' personal information as part of a "free trial" that expired and required payment after a certain number of searches. *Sessa*, 2021 WL 4245359, at *13 ("free-trial subscribers are expected to convert to paid users if their searches generate sufficient value to the trial subscriber to motivate them to pay for a subscription"); *Siegel*, 2021 WL 4306148, at *3 ("after the free trial expires . . . ZoomInfo sell[s] paid access"); *see also Lukis*¸ 454 F. Supp. 3d 746 at 751 (reaching similar conclusion for website flow using "free preview" reports). Seamless's free "Credits" are just such a "free trial." Likewise, in *PeopleConnect*, *Knapke*, and *Krause*, courts held that plaintiffs stated right of publicity claims when websites displayed profiles of the plaintiffs' personal information accompanied by buttons prompting the user to purchase a subscription. *Krause*, 2021 WL 4282700, at *3 (website advertised using "preview webpage" displaying "summary information about plaintiff" and a "button labeled, 'View Plans Now,'" which linked to page soliciting payment); *PeopleConnect*, 2021 WL 5050079, at *1; *Knapke*, 2021 WL 3510350, at *5-6. That is what Seamless does with its "Upgrade" buttons. Compl., at ¶32.

As these cases confirm, Seamless's use of Plaintiff's persona as part of a free trial, and as part of pages soliciting "Upgrades" to paid plans, is advertising giving rise to a § 3344 claim.

### 2. Seamless's advertisements are not in connection with public affairs.

Seamless is wrong that the exemption for the use of a person's "name, voice, signature, photograph, or likeness in connection with . . . news [or] public affairs" applies here. *See* Cal. Civ. Code § 3344(d). It does not. The newsworthy or "public affairs" exception "rests on the right of the public to know and the freedom of the press to tell it." *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995), *as modified* (May 30, 1995). A court analyzing the exception should "consider the nature of the precise information conveyed and the context of the communication to determine the public interest in the expression." *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410 (2001). The exception covers "almost all reporting of recent

events," about people who "create a legitimate and widespread attention to their activities." *Fraley*, 830 F. Supp. 2d at 804 (citations omitted). Although not strictly confined to news articles, the content must "significantly contribute to a matter of public interest." *Downing*, 265 F.3d at 1001.

Here, Seamless's profile containing Plaintiff's personal information does not fall under the public affairs exception because it does not "significantly contribute" to a "matter of public interest." *Id*. Plaintiff's personal information is not "in connection with any news, public affairs, or sports broadcast or account, or any political campaign," Cal. Civ. Code § 3344(d), nor does it concern "recent events." *See Fraley*, 830 F. Supp. 2d at 804. Plaintiff is not someone who creates "a legitimate and widespread attention to their activities." *Id*.

Seamless's effort to analogize its use of Plaintiff's information to advertise its paid subscription services to a yellow pages directory is unpersuasive. *See* Dkt. No. 22, at *23-24 (citing *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012)). Even if directories of information about private individuals were matters of "public interest," Seamless is arguing against a straw man because Plaintiff's claims are directed not at the underlying database of personal information, but rather at Seamless's use of Plaintiff's persona to promote subscription services. The distinction between *providing access* to information and *using information to promote a subscription* is well recognized in the case law. For example, in *Lukis v. Whitepages, Inc.*, Whitepages maintained a database of "background reports" containing individuals' names, contact information, addresses, and estimated ages. 454 F. Supp. 3d at 752. Whitepages "previewed" the background reports by teasing sample information from the reports to potential customers. *Id*., at 752-53. Like Seamless, Whitepages argued the "public affairs" exception to Illinois' right of publicity statute applied because its directory of personal information reflected a "matter of public concern." *Id*., at 762. Rejecting this defense, the court found that Whitepages missed the point of the complaint: "Defendant's invocation of [public affairs] forgets that Plaintiff's claims are directed towards the free previews, not toward the subscription services advertised by the previews." *Id*. So too here. Plaintiff's claims are directed towards Seamless's free profiles about individuals, not towards the directory Seamless makes available as part of its subscription.

As with many of Seamless's arguments, Seamless fails to acknowledge that multiple district courts have considered and rejected the "public affairs" exception on similar facts. *See, e.g.*, *Martinez*, 2022 WL 1078630, at *7 ("while ZoomInfo may operate a database that might concern matters of general interest, its specific use of Martinez's persona at issue in this case is purely commercial in nature"); *PeopleConnect*, 2021 WL 5050079, at *17-18. Again, Seamless offers no reason for a different result here. The public affairs exception does not apply.

### 3. The product being advertised is a subscription offering many services, not access to Plaintiff's persona.

Seamless argues the Complaint does not show Seamless uses Plaintiff's persona to "advertise" because the persona "*is* the product being sold." Dkt. No. 22, at *15 (emphasis in original). This argument is contradicted by the Complaint, which shows Plaintiff's name and personal information are used to advertise monthly Seamless subscription services costing between $99 and $147 per month. Compl., at ¶¶32-35. The subscription product offers far more than access to Plaintiff's profile, including: (1) the ability to search, view, and download profiles about millions of individuals; (2) the ability to set up "Real-Time Alerts" that notify the subscriber when an individual changes jobs; (3) access to a database providing information about millions of companies; and (4) enrichment tools through which Seamless will provide additional personal information about individuals of interest. *Id.*, at ¶36. Plaintiff's persona <u>cannot</u> be the product Seamless is selling, because Seamless provides access to Plaintiff's profile <u>for free</u> to the public as a means of advertising subscription plans. *Id.*, at ¶31.

Again, numerous district courts have considered and rejected Seamless's argument. *See, e.g.*, *Lukis*, 454 F. Supp. 3d 746, 760-761 ("Whitepages used [plaintiff's] identity to advertise not a background report regarding Lukis, but a monthly subscription service giving the purchaser access to background reports on anybody"); *PeopleConnect*, 2021 WL 5050079 at *17-18. Again, Seamless does not cite this authority or offer a reason for a different result here.

### 4. The doctrine of "incidental use" does not apply.

Seamless argues that because it uses many people's personas to advertise its subscriptions, the doctrine of "incidental use" bars liability for its use of Plaintiff's persona. Dkt. No. 22, at *16-18. It is far from certain that the seldom-used California doctrine of "incidental use" applies to

statutory right of publicity claims. *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1181 n.5 (9th Cir. 2015). Even if the doctrine could be applied to § 3344 claims in general, it has no application here because the Complaint shows Mr. Spindler's persona is central to the advertising webpages that are the basis for his claims. Seamless publicly displays a profile showing Mr. Spindler's name, contact information, job title, place of work, and location. Compl., at ¶31. No other individual appears in the profile. *Id.* Seamless does not contest the profile uniquely identifies Mr. Spindler. *See id.* Users who run out of free credits, or who click the "Upgrade" button adjacent to Mr. Spindler's profile, receive an advertisement for a subscription. *Id.*, at ¶¶ 32-35.

It does not matter how important Plaintiff's persona is as a percentage of Seamless's revenue. What matters is how important Plaintiff's persona is to the commercial speech on which his claim is based. *See Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) ("Even if the mention of a plaintiff's name or likeness is brief, if the use stands out prominently within the commercial speech or enhances the marketability of the defendant's product or service, the doctrine of incidental use is inapplicable"). Here, Seamless's use of Mr. Spindler's persona is far from "incidental." His persona is at the heart of the advertisement.

On similar facts, courts have found that "incidental use" does not apply. *See, e.g.*, *Knapke v. PeopleConnect*, 2021 WL 3510350, at *6 (use was not incidental because plaintiff's "persona is used to make the advertisement, which shows its commercial value."); *Sessa*, 2021 WL 4245359, at *12-13 (use was not incidental because "[t]he advertising pattern indicates that [the defendant] is trading off the value of customers searching for Plaintiffs' names in order to entice them into purchasing a subscription"); *Kellman*, 2022 WL 1157500, at *10. Seamless provides no basis for a different result here.

### 5.  Plaintiff alleges injury.

Seamless argues that Plaintiff's statutory and common law claims must fall because injury is an element of both claims. Dkt. No. 22, at *18-19. As shown in Part A above, Plaintiff alleges multiple forms of injury that have long been recognized as giving rise to both misappropriation of name or likeness and § 3344 claims.

Seamless argues that *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) ("*Cohen I*") supports dismissal. But, in a detailed analysis in *Perkins v. Linkedin Corp.*, Judge Koh explained that the reasoning in *Cohen I* and *Cohen v. Facebook, Inc.*, 2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) ("*Cohen II*") is limited to cases where the plaintiffs have already willingly shared their names and likenesses with the specific audience at issue, as they did in *Cohen* by willingly creating Facebook profiles. 53 F. Supp. 3d at 1209-10. *Cohen* does not apply when a website uses plaintiffs' names and likenesses "in a context where they did not already appear." *Id.*, at 1209 (quoting *Cohen II*, 2011 WL 5117164, at *3). In *C.M.D. v. Facebook, Inc.*, Judge Seeborg, who authored *Cohen*, distinguished *Cohen* on grounds that the plaintiffs' likenesses were used to promote "third-party products, companies, and brands" with whom they had not shared their likenesses. 2014 WL 1266291, at *2 (N.D. Cal. March 26, 2014) (quotation omitted). Because Plaintiff did not willingly share their information with Seamless, Plaintiff's claims are like those in *Perkins* and *C.M.D.*, and unlike those in *Cohen*.

### 6.  Plaintiff properly pleads entitlement to statutory damages.

Seamless's request that this Court strike Plaintiff's prayer for statutory damages should be denied. *See* Dkt No. 22, at *19. Relying on *Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008), Seamless argues that "statutory damages are only available to those who have suffered mental anguish." Dkt. No. 22, at *16-17. Judge Chen in *PeopleConnect* considered and rejected this argument. 2021 WL 5050079, at *16. As that court wrote, although *Miller* "recognizes statutory damages in § 3344 were meant to compensate plaintiffs who suffer mental anguish, nothing in *Miller* or § 3344 suggests statutory damages are available exclusively for that purpose." *Id*. The text of Cal. Civ. Code § 3344 supports this reading, providing that a violator "shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her . . . and any profits from the unauthorized use." As Judge Chen concluded, while the statutory language "require[s] that a plaintiff have suffered injury in order to be awarded damages, including statutory," the statute "on its face does not require that a plaintiff have suffered mental anguish in order to be awarded statutory damages."

2021 WL 5050079, at *16. Judge Pechman reached the same conclusion in *Martinez*. 2022 WL 1078630, at *6.

 *Fraley*, decided three years after *Miller*, supports the rulings in *PeopleConnect* and *Martinez*. The *Fraley* court denied a motion to dismiss a § 3344 claim when plaintiffs' injury was based on the defendant's failure to compensate plaintiffs for the value of their personas. 830 F. Supp. 2d at 806 ("Plaintiffs allege not that they suffered mental anguish as a result of Defendant's actions, but rather that they suffered economic injury because they were not compensated"). The court found the plaintiffs would be entitled to statutory damages so long as they could "prove actual damages" in some amount. *Id*. at 809. *Fraley* joined a long history of courts allowing non-celebrity plaintiffs to pursue statutory damages, even when their damages were economic in nature and the plaintiffs did not allege mental anguish. In *KNB Enterprises*, the court reasoned that statutory damages under § 3344 exist precisely for the case of a non-celebrity plaintiff for whom "appropriation . . . would not inflict as great an economic injury as would be suffered by a celebrity plaintiff," and noted that part of the purpose of a statutory damages provision is to "discourage such appropriation" by the defendant. 78 Cal. App. 4th at 367 (internal quotation omitted)*; see also Perfect 10, Inc. v. Talisman Communications, Inc*., 2000 WL 364813 (C.D. Cal. March 27, 2000); *Del Amo v. Baccash*, 2008 WL 4414514, at *6 (C.D. Cal. Sept. 16, 2008).

 Even were mental anguish required, Plaintiff pleads mental anguish. *See* Part A(2) *above*. Seamless argues Plaintiff's pleading is insufficient because it is a "threadbare recital[] of mental anguish, unsupported by plausible factual allegations." Dkt. No. 22, at *19. On the contrary, Plaintiff's pleading clearly states both Plaintiff's mental state and the specific reasons Seamless's illegal conduct caused his mental state. *See, e.g*., Compl., at ¶42 ("[Plaintiff] is deeply uncomfortable in the knowledge that Seamless is using his name and persona to advertise and as part of a commercial product he has no interest in supporting."). In *Martinez*, the court found that similar allegations were sufficient to allege concrete mental injury. 2022 WL 1078630, at *5. To the extent mental anguish is required to claim statutory damages, it has been properly alleged.

**D.  Plaintiff has Properly Plead UCL Claims.**

California's Unfair Competition Law ("UCL") proscribes "any unfair competition, which means any unlawful, unfair or fraudulent business act or practice." *Fraley*, 830 F. Supp. 2d at 810 (quoting *In re Pomona Valley Med. Group, Inc.,* 476 F.3d 665, 674 (9th Cir. 2007)). The UCL is "intentionally broad." *Id.* (citation omitted). Seamless's arguments have been rejected by multiple courts, and Plaintiff's UCL claim should proceed.

### 1.   Plaintiff has statutory standing under the UCL.

To demonstrate standing to bring a UCL claim, Plaintiff must show that he has "both suffered injury in fact and lost money or property as a result of the alleged unfair competition." *Id.* Plaintiff here has satisfied both prongs. First, as discussed in Section A above, Plaintiff has alleged injury in fact. Second, Plaintiff has alleged he lost money and property because Seamless used his intellectual property without compensation. Compl., at ¶41. As the court found in *Callahan v. PeopleConnect*:

> [A]s Plaintiffs point out, their names and likenesses are intellectual property, and the underlying point of § 17204 is to make sure that a plaintiff has suffered an economic injury for purposes of standing. Here, Plaintiffs have alleged an economic injury; they were not paid – implicitly, by [the defendant] – for the use of their names and likenesses. . . . [A] reasonable inference may be made that Plaintiffs' names and likeness had value in advertising the subscription services.

2021 WL 5050079, at *19; *see also Fraley*, 830 F. Supp. 2d at 811-812 (plaintiffs had UCL standing because "they have a right to be paid for their endorsements"); *see also Kellman*, 2022 WL 1157500, at *10 ("plaintiffs have alleged . . . that Spokeo was unjustly enriched and that the plaintiffs were not compensated for use of their likenesses. Both are economic injuries.").

### 2.   Plaintiff can seek relief under the UCL.

Seamless argues Plaintiff cannot bring a UCL claim because he has an adequate remedy at law. This argument relies on an overly restrictive reading of *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020), and therefore fails. Plaintiff here seeks injunctive relief (in addition to restitution) under his UCL claim, which the *Sonner* court did not consider. *Id.,* at 844. A court in this district recently recognized this distinction, finding that where the plaintiff sought prospective injunctive relief and the "remedy at law, damages, is retrospective," a UCL claim for

an injunction is not barred by *Sonner. Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021); *see also Kellman*, 2022 WL 1157500, at *12 (rejecting a similar argument); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (even if *Sonner* applies to injunctive relief, "monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at."); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *7-8 (N.D. Cal. Nov. 6, 2020) (denying motion to dismiss restitution claims when recovery for future harm was available in restitution but not at law).

Here, Plaintiff asks for "injunctive relief enjoining and preventing Seamless from continuing to operate its website without appropriate safeguards to ensure people's personal information is not used illegally." Compl., at ¶70(d). This prospective remedy could not be resolved through restitution or damages under Plaintiff's other claims. Additionally, at this early stage, we do not know yet whether Plaintiff will have an adequate remedy at law. Seamless's motion to dismiss the UCL claim should be denied.

**E. Seamless's Frivolous Anti-SLAPP Motion to Strike Should be Denied.**

California's anti-SLAPP statute provides that a cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(a). Because Seamless's profiles about individuals are not speech "in connection with a public issue," and for the additional reasons below, Seamless's anti-SLAPP motion should be denied. Because many courts have summarily denied nearly identical motions, and because Seamless fails to cite these decisions, Plaintiff respectfully requests this Court find that Seamless's motion is frivolous and award fees and costs to Plaintiff.

**1. Seamless's advertisements do not concern a public issue.**

Seamless cannot meet its burden of showing that the advertisements incorporating Plaintiff's persona are "speech in direct connection with an issue of public concern." *See* Cal. Civ. Proc. Code § 425.16(e); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009)

(burden to show "public issue" rests with party asserting anti-SLAPP). California law establishes the following guiding principles:

> (1) "public interest" does not equate with mere curiosity;
>
> (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest;
>
> (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient;
>
> (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and
>
> (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 968 (N.D. Cal. 2013) (citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (2003)). Plaintiff's name, job title, contact information, and location are not speech about an issue of public concern. They do not concern a "substantial number of people." Nor can Seamless convert private information "into a matter of public interest simply by communicating it to a large number of people."

The cases Seamless cites serve only to demonstrate how different its conduct is from the kind of speech that courts view as connected with the "public interest." *See* Cal. Civ. Proc. Code § 425.16(e). Seamless's profiles and advertising webpages do not serve to warn the public against fraud or misconduct. *Cf. Ruiz v. Harbor View Community Ass'n*, 134 Cal. App. 4th 1456, 1463 (2005) (speech accusing committee of exposing association members to "serious liability and potential damages"); *Grenier v. Taylor*, 234 Cal. App. 4th 471 (2015) (allegations of theft and misuse of church funds). Nor has Seamless published a magazine article about "a prominent . . . celebrity." *Cf. Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (Cal. Ct. App. 2008).

Because profiles that advertise website subscriptions using individuals' personal information do not concern a "public issue," courts are unanimous in summarily denying anti-SLAPP motions on these facts. *See, e.g.*, *Martinez*, 2022 WL 1078630, at *7 ("There is no evidence to suggest that [plaintiff's] persona is a matter of public interest"); *Sessa*, 2021 WL 4245359, at *16 (denying anti-SLAPP motion because "the challenged advertising communications do not

implicate matters of public concern"); *Ancestry*, 2021 WL 783524, at *11 (denying anti-SLAPP motion and noting that the cases defendant relied on concerned "celebrities, public officials, or the public realm or more obvious public interest"); *PeopleConnect*, 2021 WL 5050079, at *21. Seamless does not cite these cases.

### 2. Plaintiff made a prima facie showing of facts.

Even had Seamless shown its advertisements are "speech" on an issue of "public concern," the anti-SLAPP motion still fails because Plaintiff made a "prima facie showing of facts to sustain a favorable judgment." *See Hilton*, 599 F.3d at 903 (9th Cir. 2009) (quotations omitted). As demonstrated throughout this opposition, the Complaint easily clears this low bar. *See id.*, at 908 ("[T]he required probability that [the plaintiff] will prevail need not be high.").

### 3. The exceptions for commercial speech and suits in the public interest apply.

Recognizing "that there has been a disturbing abuse" of the anti-SLAPP law undermining the very rights "of speech and petition" the anti-SLAPP law was meant to protect, California's legislature recognizes two exceptions that apply here. First, anti-SLAPP protection does not apply to commercial speech. Cal. Civ. P. Code § 425.17(c) excludes speech by defendants who are "in the business of selling . . . goods or services" that is "made for the purpose of . . . promoting . . . goods or services" and for which the intended audience is "an actual or potential buyer or customer." As alleged in the Complaint, Seamless is in the business of selling subscriptions, its purpose in distributing profiles about Plaintiff is selling subscriptions, and the intended audience is potential subscribers. Accordingly, anti-SLAPP does not apply. *See L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 927 (2015) ("commercial speech that does nothing but promote a commercial product or service is not speech protected under the anti-SLAPP statute."). Many courts have denied similar anti-SLAPP motions on the ground that using profiles of personal information to promote subscriptions is commercial speech that is not entitled to anti-SLAPP protection. *See, e.g.*, *Martinez*, 2022 WL 1078630, at *7 (denying California anti-SLAPP motion brought by direct competitor of Seamless because "the speech at issue is commercial in nature and not protected speech"); *Boshears v. PeopleConnect*, No. 21-cv-01222-MJP, 2022 WL 888300, at *7 (W.D. Wash. Mar. 25, 2022) (Washington's anti-SLAPP statute did

not apply because the defendant's "commercial use of [plaintiff's] name and likeness to sell subscription services . . . proposes a commercial transaction").

Second, anti-SLAPP does not apply to "any action brought solely in the public interest or on behalf of the general public." Cal. Civ. Proc. Code § 425.17(b). A class action is immune from anti-SLAPP if (1) the plaintiff does not seek relief different from the class, (2) the action would enforce an "important right affecting the public interest," and (3) "private enforcement is necessary and places a disproportionate financial burden on the plaintiff." *Id*. Plaintiff's suit against Seamless is immune under § 425.17(b). The Plaintiff seeks the same relief as the class; the action seeks to protect the public from the unscrupulous theft of their personas; and the amounts at stake are too small for individual claims to be a viable path to protecting the public interest. *See, e.g.*, *Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp. 2d 1205, 1218-19 (N.D. Cal. 2010) (applying exception to deny anti-SLAPP motion in a class action by consumers against a debt collection company).

An order denying an anti-SLAPP motion is subject to immediate interlocutory appeal, while an order finding that the commercial speech or public interest exceptions apply is not. *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759 (9th Cir. 2017) (citing Cal. Civ. Proc. Code § 425.17(e)). Defendants in similar cases have used interlocutory appeals of anti-SLAPP rulings to delay the district court litigation. *See, e.g.*, *Sessa*, 20-cv-02292, Dkt. 51 (D. Nev. Apr. 14, 2022) (defendant appealed anti-SLAPP ruling and obtained automatic stay of district court litigation, then voluntarily dismissed appeal less than a month before oral argument). Accordingly, Plaintiff respectfully requests the Court address the commercial speech and public interest exceptions in its ruling even if it also denies Seamless's motion on alternate grounds.

### 4. Plaintiff respectfully requests fees and costs related to opposing Seamless's frivolous anti-SLAPP motion.

If an anti-SLAPP motion "is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." Cal. Civ. Code § 416(c). An anti-SLAPP motion is "frivolous" if it is "totally and completely without merit." *Baharian-Mehr v. Smith*, 189 Cal.App.4th 265, 275 (Cal. Ct. App. 2010) (quotation

omitted). "[T]he imposition of sanctions for a frivolous anti-SLAPP motion is mandatory." *Moore v. Shaw*, 116 Cal.App.4th 182, 198-99 (Cal. Ct. App. 2004).

Seamless's anti-SLAPP motion to strike is completely without merit. Five nearly identical anti-SLAPP motions have been summarily denied. *See Martinez*, 2022 WL 1078630, at *7; *PeopleConnect*, 2021 WL 5050079, at *21; *Boshears*, 2022 WL 888300 at *7; *Callahan v. Ancestry,* 2021 WL783524, at *7 ; *Sessa*, 2021 WL 4245359, at *16. Seamless does not mention or attempt to distinguish this precedent. *See* Dkt. No. 22, at *22-23. Courts in similar circumstances have ruled anti-SLAPP motions were frivolous and awarded fees and costs. *See, e.g.*, *Moore*, 116 Cal.App.4th at 199 (awarding fees when the defendant "failed to meet her threshold burden of establishing the challenged causes of action arose from protected activity."). Plaintiff respectfully requests the same result here.

**F.  Seamless's Request for a Stay Pending the *Sessa* Appeal Should be Denied as Moot.**

Seamless requests that if the Court does not grant its motions to dismiss or strike, the Court should stay this case pending resolution of the erstwhile appeal in *Sessa v. Ancestry.com*, Case No. 21-16618 (9th Cir. 2021). As described in Part E above, in *Sessa*, a Nevada district court denied a Nevada anti-SLAPP motion filed by a defendant who, like Seamless, uses individuals' names and personas without permission to advertise website subscriptions. *Sessa*, 2021 WL 4245359, at *16. The defendant Ancestry.com appealed.

On April 14, 2022, the Ninth Circuit granted Ancestry.com's motion to voluntarily dismiss the *Sessa* appeal. *Sessa*, 21-16618, Dkt. No. 31 (9th Cir. filed Apr. 14, 2022). Because the defendant voluntarily dismissed the appeal in *Sessa*, Seamless's request for a stay pending resolution of that appeal should be denied as moot.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Seamless's motions to dismiss, to strike, and to stay. In addition, Plaintiff respectfully requests the award of fees and costs for time spent opposing Seamless's frivolous anti-SLAPP motion.

Dated: April 25, 2022

Respectfully Submitted,

By: */s/ Raina C. Borrelli*
Raina Borrelli (*Pro Hac Vice*)
raina@turkestrauss.com
Sam Strauss (*Pro Hac Vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

Michael F. Ram (SBN 104805)
mram@forthepeople.com
Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Benjamin R. Osborn (*Pro Hac Vice*)
LAW OFFICE OF BENJAMIN R. OSBORN
102 Bergen St.
Brooklyn, NY 11201
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Raina C. Borrelli, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 25th day of April, 2022.

TURKE & STRAUSS LLP

By:   _/s/ Raina C. Borrelli_____
Raina C. Borrelli *Admitted Pro Hac Vice*
Email: raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423